(857 P.2d 1380)

No. 68,475

DONALD L. LAMB, *Appellant*, v. CITY OF ELSMORE, KANSAS, *Appellee*.

Opinion filed August 6, 1993.

*Randall J. Forbes*, *S. Eric Steinle*, and *Kevin M. Fowler*, of Frieden, Haynes & Forbes, of Topeka, for the appellant.

*John A. Bausch*, of Benfer & Bausch, P.A., of Topeka, and *Robert F. Chase*, of Talkington & Chase, of Iola, for the appellee.

Before BRISCOE, C.J., LEWIS and ROYSE, JJ.

BRISCOE, C.J.: This is a personal injury action brought by Donald L. Lamb against the City of Elsmore, Kansas (City). Lamb was burned by electrical shock when working on telephone lines for his employer, Craw-Kan Telephone Cooperative (Craw-Kan). Lamb appeals the summary judgment entered in favor of the City. Lamb contends the court erred in concluding (1) the City was immune from liability under the discretionary function exception of the Kansas Tort Claims Act, K.S.A. 75-6104(e); (2) Lamb was a licensee as to the City and, therefore, was owed no duty by the City other than to refrain from willfully or wantonly injuring him; and (3) the City was "not guilty of gross and wanton negligence nor did it willfully or wantonly injure" Lamb.

The City operates an electrical public utility within its corporate limits. The City buys electricity from Kansas Gas and Electric Company and sells it to utility customers residing in the City. Both the City and Craw-Kan own utility poles within the city limits, and, by agreement, they jointly use each other's poles.

In the winter of 1988-89, the City experienced problems with squirrels shorting out fuses on top of the transformers located on the utility poles. The fuses were difficult to replace because they were mounted on a crossarm approximately 35 feet above the ground. The replacement of fuses was accomplished by using a 32-foot "hot stick" and was especially difficult if it was windy or rainy. In order to facilitate the replacement of fuses, the Elsmore City Council hired Dean Huff in January 1989 to lower the fuse cutouts from the top crossarm of the utility poles to a new crossarm below the transformers. When the fuse cutouts were lowered, new insulated wiring was installed from the transformer to the cutouts and from the cutouts to the transmission lines. The new lower crossarm to which the transmission wires and fuse cutouts were attached was located below where the telephone wire was connected to the utility pole. Although controverted, there is evidence this new configuration violated various safety standards, including the National Electrical Safety Code (NESC). The parties also dispute whether the NESC is even applicable to the City's actions.

On May 10, 1989, in response to a Craw-Kan customer who had requested repair services because his telephone had no dial

tone, Lamb climbed one of the City's utility poles to check the telephone line. Lamb did not check first to see whether the electrical lines on the pole were energized. Lamb noticed that fuses and new lead wires had been installed in close proximity and below the telephone line. Because inadequate clearance between telephone lines and high-voltage electrical lines can interfere with transmissions along telephone lines, Lamb decided to lower the telephone line. While attempting to lower the telephone line, Lamb apparently came in contact with an electrical line and was burned by an electrical shock of 7,200 volts. Lamb subsequently brought this action against the City, alleging the City was negligent in lowering the fuse cutouts.

I. Discretionary Function Exception.

Lamb contends the City's action in lowering the fuse cutouts was not a discretionary function and, therefore, the City is not immune from liability as a matter of law under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq*. The court found the City's actions fell within the discretionary function exception because the court could not identify any "specific, mandatory established guidelines" which the City's employees were to follow when lowering the fuse cutouts.

"This court's review of conclusions of law is unlimited." *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988). Our standard of review regarding summary judgment was stated in *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 306-07, 756 P.2d 416 (1988):

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. . . . If factual issues do exist, they must be material to the case to preclude summary judgment."

"Under K.S.A. 75-6103(a), a governmental entity is liable for the negligent or wrongful acts or omissions of its employees acting within the scope of their employment under the same circumstances that a private person would be liable." *Collins v. Board of Douglas County Comm'rs*, 249 Kan. 712, 720, 822 P.2d 1042

(1991). The parties have stipulated that the City is liable for the conduct of Huff in lowering the cutouts and that the City is a governmental entity under K.S.A. 1992 Supp. 75-6102(b) and (c). The parties disagree, however, as to whether the discretionary function exception applies to the City to relieve it of liability in this case.

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. 1992 Supp. 75-6104.

The governmental entity asserting the discretionary function exception as a defense has the burden of establishing the actions complained of fall within the exception. *Barber v. Williams*, 244 Kan. 318, 320, 767 P.2d 1284 (1989). Under the Tort Claims Act, "liability is the rule, immunity the exception. Ordinarily a strict or narrow interpretation must be applied to statutory exceptions." 244 Kan. at 320. As regards the discretionary function exception, the Supreme Court has stated:

"[T]he discretionary function exception is not applicable in those situations where a legal duty exists, either by case law or by statute, which the governmental agency is required to follow. The governmental agency cannot properly claim that its challenged action falls within the discretionary function exception where the action taken violated a legal duty." *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 322, 757 P.2d 272 (1988).

In the present case, we must first determine what duty was owed Lamb by the City before we can determine whether the court erred in concluding on a motion for summary judgment that the discretionary function exception was a defense to the breach of that duty. In *Webb v. City of Oswego*, 149 Kan. 156, Syl. ¶ 1, 86 P.2d 553 (1939), the Supreme Court held that "[a] city which owns and operates an electric light plant and distribution system for the benefit of its inhabitants is bound to the same degree of care in the maintenance thereof as though it were an ordinary public utility." See *Gilmore v. Kansas City*, 157 Kan. 552, 554, 142 P.2d 699 (1943) (recognizing the holding in *Webb*

and stating "operation of the plant for the city by a separate agency does not relieve the city from liability").

"The degree of care required of distributors of electricity is the degree which would be used by prudent persons engaged in the industry, under like conditions and commensurate with the dangers involved and the practical operation of the plant, to guard against contingencies which can be reasonably foreseen and anticipated. Where the wires maintained by a company are designed to carry a powerful current of electricity, so that persons coming in contact with them are certain to be seriously injured or killed, *the law imposes upon the company the duty of exercising the utmost or highest degree of care to prevent such injury*, especially where high-tension wires are suspended over the streets of populous cities or towns. [Citation omitted.]" *Folks v. Kansas Power & Light Co.,* 243 Kan. 57, 61, 755 P.2d 1319 (1988).

See *Cerretti v. Flint Hills Rural Electric Co-op Ass'n,* 251 Kan. 347, 350, 837 P.2d 330 (1992).

In light of the foregoing authorities, the City had no discretion other than to take precautions consistent with the high degree of care it owed to Lamb and others. Whether those precautions were taken in the present case is a question which remains for the factfinder to determine. See *Cerretti,* 251 Kan. at 357. Further, NESC § 22, 220.B.1 (1989) could be applicable to the City if commonly recognized by other reasonably prudent persons involved in the electricity industry. NESC § 22, 220.B.1 provides: "Where supply and communication conductors cross each other or are located on the same structures, the supply conductors should be carried at the higher level." In fact, compliance with NESC alone may not be sufficient to avoid liability. "While [conformity with the NESC or an industry-wide standard] may be evidence of due care, compliance with industry standards, or standards legislatively or administratively imposed, does not preclude a finding of negligence where a reasonable person engaged in the industry would have taken additional precautions under the circumstances." 251 Kan. at 356-57.

II. Applicability of Premises Law.

Lamb also contends the court erred in holding, as a matter of law, that he was a licensee to whom the City owed no duty except to refrain from willfully or wantonly injuring him. Lamb first argues premises law, upon which the characterization of licensee is based, is inapplicable to his situation.

Lamb argues the traditional principles of premises liability are inconsistent with the requirement that distributors of electricity exercise the "highest degree of care." See *Folks*, 243 Kan. at 61. He quotes language from *Cerretti* that "[t]he law imposes upon Flint Hills the duty of exercising the utmost or highest degree of care to prevent such injury *where people have the right to be upon the property for work, pleasure, or business.*" (Emphasis added.) 251 Kan. at 357. Lamb also notes KP&L was held liable in *Folks*, 243 Kan. at 59. He quotes language from *Wade v. Electric Co.*, 94 Kan. 462, Syl. ¶ 1, 147 Pac. 63 (1915), which states: "Electric companies that suspend wires charged with a high voltage of electricity over or along the highway are required to exercise the highest care in constructing and maintaining their poles and wires so as to avoid injury to those using the highway for work, business and pleasure."

Lamb also relies on *Weber v. Southwestern Bell Telephone Co.*, 209 Kan. 273, 497 P.2d 118 (1972). In *Weber*, the pilot and passenger of a plane were injured when the plane struck Southwestern Bell's telephone lines as it was attempting to land on an airstrip operated by Lowell Strickler. Suit was brought against Strickler and Bell. Because Strickler did not operate the airstrip as a commercial enterprise, the court specifically concluded plaintiff was at most a licensee. The court further concluded that, because Strickler had warned plaintiff of the telephone lines, he had fulfilled any duty to plaintiff. Bell attempted to align itself with Strickler and use premises law as a defense. Although the Bell lines were on Strickler's land, the court noted Bell's right to occupy the land was questionable and was probably one of a continuous revocable licensee as to the landowner. The court stated:

"This court questions the logic of a rule that would place Bell within the legal category that it contends is applicable. Due to the nature of the occupancy ostensibly held by Bell, it would be difficult to imagine facts and circumstances under which it would owe any duty to a person entering upon its occupancy or the airspace above, other than that owed a trespasser or at best a licensee. The only purpose of Bell's occupancy on the Strickler land is to further its own business interests. There would be little or no economic or business reason for any person to enter upon Bell's occupancy so as to afford him the status of an invitee as contemplated by the 'premises law.' Moreover, it would be equally as pervasive to consider circumstances

under which anyone would enter upon Bell's occupancy as a social guest to be afforded the status of a mere licensee. The use of 'premises law' to delineate Bell's duty would in effect define out of existence any affirmative duty it owed to maintain its lines so as not to create or permit dangerous conditions to exist that might cause injury to the public. In short, we conclude that the 'premises law' does not provide a functional test to define the legal relationship that Bell had with the appellant, and we decline to use that approach as a solution to this lawsuit.

. . . .

"While cases concerning the legal status of air travelers who are injured as a result of contact with the lines of public utility companies found in other jurisdictions indicate that the authorities are split on the question, *this court, considering the matter on first impression, is of the opinion it should adopt and follow the great weight of authority to the effect that a public utility company is not relieved of liability to such persons injured as a result of contact with its lines, where the proximate cause of such injury can be attributed to its negligence in construction, inspection, or maintenance of its lines, upon the theory the person injured was a licensee or trespasser on a third party's land.*

"We conclude that a public utility company must exercise reasonable care and precaution to prevent injury, not only to persons who have a right to be on the land or in the airspace above where the injury occurred, but also to persons whom the company should reasonably have anticipated might be present and exposed to danger at that location. The standard of care applicable, that of ordinary negligence based upon the foreseeability of the injury, will be complied with if the company provides such protection as will safely guard against any contingency that may be reasonably anticipated. . . . Under such circumstances, the company ought not be permitted to escape liability for injury actually inflicted, as a proximate cause of permitting such a danger to exist, merely because the injured party was a trespasser or licensee insofar as a third party landowner may be concerned. [Citations omitted.]" 209 Kan. at 287-88.

The City contends that premises law is applicable in this case. It distinguishes *Weber's* dismissal of the applicability of premises law because "the court applied principles of law applicable to aircraft." The City further attempts to distinguish *Weber* by noting that, in *Weber*, Bell was not a landowner and there was a dispute regarding Bell's right to maintain lines on the Strickler property. The City then offers that Lamb has never contested that the City is a landowner for purposes of application of premises law in the present case. The City also notes that Kansas and other states have applied premises law to distributors of electricity. See *Moseley v. City of Kansas City*, 170 Kan. 585, 228 P.2d 699 (1951) (child who climbed city's utility pole, which

carried electricity and telephone wires, was a trespasser to whom no duty was owed other than to not willfully or wantonly injure him).

While we recognize Moseley as applying premises law to distributors of electricity, we conclude Weber states the present law and should be applied in this case. While Moseley is not recognized or distinguished in Weber, we will rely on Weber because Weber is the more recent statement by our Supreme Court on the question concerning the duty owed by public utilities to those injured as a result of contact with public utility lines. While it could be argued Moseley can be distinguished because the pole in question was situated on city property and not on the property of a third party, Weber does not make that distinction. We note in the present case it is uncontroverted the City owned the pole on which Lamb was injured, but it is not clear from the record who owned the land upon which the pole was located. By its refusal to apply premises law to a case where injury occurred as a result of contact with public utility lines, it does not appear the court in Weber would apply premises law in this case even if the pole were located on City property.

As we conclude premises law is inapplicable to the present case, we need not address whether the court erred in concluding that no reasonable jury could find the City guilty of gross and wanton negligence.

Reversed and remanded for further proceedings.