No. 78,074

DAVID A. BROCK and KERRIE LOU BROCK, individually and as natural guardians and next friend of KAYLA JO BROCK, *Appellants*, v. RICHMOND-BEREA CEMETERY DISTRICT and RAYMOND WAGNER, individually, *Appellees*.

(957 P.2d 505)

Opinion filed April 17, 1998.

*John L. Richeson*, of Anderson, Byrd, Richeson & Flaherty, of Ottawa, argued the cause and was on the briefs for appellants.

*E. Dudley Smith*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Overland Park, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

DAVIS, J: Three-year old Kayla Jo Brock was tragically and severely injured while on a trip with her grandmother to the local cemetery when a large monument gravestone fell on top of her. The trial court granted the Richmond-Berea Cemetery District (cemetery) and its caretaker Raymond Wagner summary judgment, concluding as a matter of law that neither the cemetery nor its caretaker owed a duty to Kayla Jo.

David and Kerrie Brock, parents of Kayla Jo, appeal, contending that the trial court erred in awarding summary judgment on the basis that: the defendants had no notice or knowledge of the existence of a dangerous condition; the defendants were granted immunity under K.S.A. 75-6104(o) of the Kansas Tort Claims Act regarding recreational use; the defendants were granted immunity under the operation of K.S.A. 75-6104(k) of the Kansas Tort Claims Act regarding the duty to inspect; and defendant Wagner owed no duty of care to maintain the monument gravestone in a reasonably safe manner. We affirm.

On April 9, 1995, Kayla Jo was visiting the Richmond Cemetery with her grandmother, Dorothy Brock. They spent approximately 15 minutes visiting the graves of Dorothy's parents and her son. Following the visitation, they were walking beside the road when Kayla Jo darted away from her grandmother and began chasing birds. She ran to a gravestone that was tilted at what was said to be a 45-degree angle and put her hands on the gravestone, which then toppled over on her.

The gravestone that fell had been standing for a number of years on the grave of Elijah Lyons. The grave lot had been purchased in 1901. Despite the defendants' assertions, there is no evidence in the motion for summary judgment which establishes when the gravestone was placed. It is uncontroverted, however, that Elijah Lyons died on April 13, 1901.

Richmond Cemetery is owned and operated by Richmond-Berea Cemetery District, a municipality organized pursuant to K.S.A. 17-1330 *et seq.* The cemetery district encompassing both the Richmond Cemetery, which is involved in this case, and the Berea Cemetery was organized in 1935. The cemetery conveys lots to purchasers in fee simple for the purposes of sepulture alone. The cemetery does not purchase gravestones nor keep records regarding gravestone ownership. Instead, the families of the deceased, as well as others, purchase and arrange for the placement of gravestones. The cemetery contends that it does not and has never maintained the gravestones.

Wagner has been employed by the cemetery since 1988. His duties included mowing grass, trimming trees, marking graves for funerals, and backfilling graves. It is uncontroverted that Wagner did not maintain the gravestones, nor was he asked to do so. Although the Brocks attempted to controvert this statement by asserting that Ed Horstick, a member of the cemetery board, had testified that Wagner was to "care for the cemetery," the cited portion of Horstick's deposition states that Wagner was to care for the cemetery by doing the duties enumerated above. No mention is made of maintaining gravestones.

Wagner testified that when he saw the Lyons gravestone on April 3, 1995, 6 days prior to the accident at issue, it was leaning at a 5-

to 10-degree angle as it had been the entire time he had been mowing grass for the cemetery. The Brocks' attempt to controvert this assertion by contending that Wagner's testimony, due to his age, is not credible and must be weighed by the trier of fact to determine whether Wagner actually remembers the Lyons gravestone as opposed to other gravestones in the cemetery.

Access by the public to the cemetery is unlimited; there is no fence or gate. Members of the public use the cemetery as a place to walk for exercise, and at times, children play in the cemetery. Some persons use the cemetery as a place to drink beer, and beer and soda cans are sometimes found on the property. The cemetery and Wagner were aware that the cemetery was used by the public for such activities as walking, running, playing, bicycling, drinking beer and soda, and walking dogs.

The trial court ruled from the bench after arguments of the parties on the defendants' motion for summary judgment. The court made reference in its ruling to the statement of facts submitted by the parties. Summary judgment was granted to the defendants and later journalized by incorporation of the trial court's transcript of findings and conclusions.

In its findings and conclusions, the trial court concluded that the cemetery was not liable for failure to make any inspection under the provisions of K.S.A. 75-6104(k). The court further concluded that the caretaker's duties did not and had never included taking care of gravestones. Thus, it concluded that the caretaker "had no duty relative to this tombstone and that he has no liability for any . . . injury suffered as [a] result thereof in the absence of some affirmative action that he took, and none is shown by any of the record." Moreover, the court determined there was no evidence that the cemetery had prior knowledge of a dangerous condition and that absent such knowledge, the cemetery was not liable for the injury to Kayla Jo.

The essence of the trial court's opinion is that the cemetery had no duty to inspect the gravestones and had no notice of a dangerous condition. Absent such knowledge, the cemetery is not liable for harm caused by that condition. An exception to this rule, noted by the trial court, exists where the condition existed for a long enough

period of time to warrant a conclusion that the cemetery was on constructive notice of the condition. However, the trial court noted that the only evidence of such a condition was that immediately before the gravestone fell, it was tilting at a 45-degree angle. A few days before the accident, Wagner observed the gravestone tilting at a 5- to 10-degree angle, which it had done since his employment 6 years prior to the injury. Thus, the trial court concluded that the cemetery had no notice of a dangerous condition and absent such notice had no duty.

While the trial court's findings and conclusions cover all questions raised by the parties, three critical determinations made by the court support the summary judgment entered. First, because the cemetery was organized and operating as a municipality, the Kansas Tort Claims Act applies. Under the provisions of K.S.A. 75-6104(k) of the Kansas Tort Claims Act, the cemetery was not liable for the failure to make an inspection or for making an inadequate or negligent inspection. Second, the uncontroverted facts support the trial court's conclusion that neither the cemetery nor its caretaker had notice or knowledge of a dangerous condition which caused the injury. Finally, based upon the uncontroverted material facts, neither the cemetery nor its caretaker owed a duty to Kayla Jo.

## K.S.A. 75-6104(k)

K.S.A. 75-6104(k) provides that a governmental entity or an employee acting within the scope of employment shall not be liable for:

"the failure to make an inspection, or making an inadequate or negligent inspection, of any property other than the property of the governmental entity, to determine whether the property complies with or violates any law or regulation or contains a hazard to public health or safety."

The Brocks argue on appeal that K.S.A. 75-6104(k) does not apply because the fee simple deed given to the purchaser of a cemetery lot does not convey fee simple title. Thus, according to their argument, the cemetery plot is not "any property other than the property of the governmental entity," and a duty to inspect exists. The general rule is that an interest in a burial lot is somewhat

unique and a purchaser does not acquire a fee simple interest in a cemetery lot. See 14 Am. Jur. 2d, Cemeteries § 25. However, the purchaser does acquire an exclusive right to make internments in the lot and a right to be free from invasion by those who would disturb his or her possession, as well as use of the public areas of the cemetery to obtain access to the lot. 14 Am. Jur. 2d, Cemeteries § 25, p. 733.

We have held that a cemetery, by its inherent nature, is not subject to the laws of ordinary property. *State ex rel. Stephan v. Lane*, 228 Kan. 379, 386, 614 P.2d 987 (1980). In *Lane*, the question was whether a compensable taking of private property occurred where an abandoned cemetery was transferred from the control of the cemetery association to the control of the city. This court held that cemetery property was in the manner of a trust and, when the cemetery was abandoned, the trust was forfeited, with no need for compensation to be paid. 228 Kan. at 387-88. Contrary to the trial court's legal conclusion that the deed in this case conveyed fee simple title to the purchasers, the general rule applies. The purchaser acquires an exclusive right to make internments in the lot and a right to be free from invasion by those who would disturb his or her possession, as well as the use of the public areas of the cemetery to obtain access to his or her lot.

However, the above conclusion does not alter the result reached by the trial court. The undisputed facts demonstrate that the cemetery does not purchase or set the gravestones. Instead, the family of the deceased, as well as other parties, own, place, set up, change, replace, or remove the gravestones. However, the cemetery does take some interest in the gravestones in that the placement is subject to regulations promulgated by the cemetery, and the cemetery has in the past overseen the replacing of gravestones and, in fact, reset the Lyons gravestone following the accident. Thus, it appears that the gravestones are not the property of the cemetery, but the cemetery does accept some duties with regard to their inspection and maintenance. Accordingly, the gravestone itself does not become the property of the cemetery and, therefore, is "property other than property of the governmental entity" for the purposes of K.S.A. 75-6104(k).

As noted by the defendants, this court has applied the provisions of K.S.A. 75-6104(k) under similar circumstances. In *Siple v. City of Topeka*, 235 Kan. 167, 679 P.2d 190 (1984), the plaintiffs' car was crushed by a falling tree. The tree, which abutted the street, was on property owned by a resident but was subject to K.S.A. 12-3201, which gave the city certain rights to regulate maintenance of such trees and to maintain such trees and shrubbery where the property owners failed to do so. The city was informed that the tree in question was in a dangerous position, and the city sent the city forester to inspect the tree. The city forester determined that the tree was not hazardous. The plaintiffs sued the city for negligent inspection.

This court found that K.S.A. 1983 Supp. 75-6104(j) (now K.S.A. 75-6104[k]) applied to grant the city immunity. This court noted that the inspection was done by the city forester within the scope of his employment and that it was done in a negligent manner. Therefore, we determined that it fell within the statute and the city was immune from liability. 235 Kan. at 173-74.

The circumstances in this case are analogous to those in *Siple*. The city of Topeka was not the owner of the tree in *Siple* but did have some rights concerning the maintenance thereof and a duty to inspect the tree to determine whether it constituted a hazard. In the same manner, it is uncontroverted that the cemetery is not the owner of the individual gravestones, although it may have some duty to inspect and maintain them. In *Siple*, we noted that the intent of the statute exempting this category from liability is to be encouraged rather than discouraged. We conclude that Siple applies in this case. The trial court did not err in determining that K.S.A. 75-6104(k) applies.

However, unlike *Siple*, the application of K.S.A. 75-6104(k), under the facts of this case, does not absolve the cemetery of all possible liability. In *Siple*, it was undisputed that the city forester performed an inspection and found that the tree was not hazardous. Once this fact was in evidence, the only possible liability on the part of the city was for negligent inspection. Because K.S.A. 75-6104(k) granted the city immunity for negligent inspection, the city was entitled to summary judgment. In this case, the cemetery

could still be liable if it had had knowledge that the gravestone was in a dangerous condition, or if, as the Brocks assert, it had performed an inspection and discovered the dangerous condition but had done nothing to remedy the situation.

The trial court acknowledged that the cemetery may still be liable if it had knowledge of the existence of a dangerous condition and did nothing to correct the condition. Thus, the trial court did not grant complete summary judgment for the defendants based solely on the operation of K.S.A. 75-6104(k), but instead simply held that K.S.A. 75-6104(k) precluded any liability for possible contentions of negligent inspection or failure to inspect.

## Knowledge or Notice of a Dangerous Condition

As a prelude to consideration of this issue, it is necessary to set out the standard of liability for a landowner in Kansas. Generally, in the absence of any statutory exemptions, the occupier of land owes to invitees and licensees alike a duty of reasonable care under the circumstances. *Jones v. Hansen*, 254 Kan. 499, Syl. ¶ 2, 867 P.2d 303 (1994). Before a landowner may be held liable for an injury resulting from a dangerous condition, however, the plaintiff generally must show that the defendant had actual knowledge of the condition or that the condition had existed for such a length of time that in the exercise of ordinary care the landowner should have known about it. See *Knowles v. Klase*, 204 Kan. 156, 157, 460 P.2d 444 (1969).

The Brocks contend that the district court erred in granting summary judgment on the basis that the cemetery and Wagner had no notice or knowledge of the existence of a dangerous condition. They assert four major arguments in support of their contention: (1) The district court went beyond the issues of the summary judgment motion; (2) the facts clearly showed that the cemetery and Wagner had knowledge; (3) a 5- to 10-degree tilt constitutes a foreseeable risk of harm; and (4) whether or not the cemetery and Wagner had knowledge, they are still liable because the dangerous condition was patent or fell under the mode-of-operation rule.

The standard of review for determinations on summary judgment has been often stated. Generally, the burden on the party

seeking summary judgment is a strict one, and the district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. See *Mintzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

## The Brocks' Contentions

(1) The Brocks first argue that the court went beyond the scope of the summary judgment motion in determining that the cemetery and Wagner had no notice or knowledge of the existence of a dangerous condition. The Brocks contend that if they had known that the court would decide this issue, they would have objected because discovery had not been completed.

The record establishes that the issue of whether the cemetery or Wagner had notice of the gravestone's tilting at a 45-degree angle was before the court. In their supplemental brief in support of the motion for summary judgment, the cemetery and Wagner raise this issue. The Brocks did not object, and the issue was therefore before the trial court.

(2) The Brocks claim that the trial court's conclusion that there was no evidence that either of the defendants had notice of a dangerous condition ignored evidence which would have established a factual dispute. They contend that the evidence plainly showed that the cemetery and Wagner possessed knowledge prior to the accident that the gravestones in the cemetery were in need of repair and that several had been knocked over.

The defendants contend that the above arguments are based on the misinterpretation of testimony concerning the vandalism of the Richmond Cemetery in 1984 and upon Wagner's faulty recollec-

tion concerning a discussion about repairing gravestones in the Berea Cemetery, not the Richmond Cemetery, where this accident occurred. The defendants are correct regarding the testimony that several gravestones had been previously knocked over. The only evidence of this prior damage concerns vandalism of the Richmond Cemetery in 1984.

It is also true that Wagner made statements concerning repairs of gravestones in Richmond Cemetery prior to this accident. However, Wagner later corrected these statements to establish that the discussion had been about gravestones in the Berea Cemetery, not the Richmond Cemetery. This correction was called to the attention of the trial court at the hearing on the motion for summary judgment. The Brocks, upon receipt of Wagner's corrected deposition, made no request to again depose Wagner regarding the correction. Neither the prior vandalism nor Wagner's repair of gravestones in Berea Cemetery establish that the defendants had notice of the Lyons gravestone tilting at what was said to be a 45-degree angle. Thus, the trial court was correct in its finding that there was no evidence establishing that either the cemetery or Wagner had notice of the Lyons gravestone tilting at a 45-degree angle.

(3) The Brocks argue that the undisputed fact that the gravestone tilted at a 5- to 10-degree angle created a genuine issue of fact concerning the existence of a dangerous condition. It is uncontroverted that both Wagner and the cemetery knew that the Lyons gravestone tilted at a 5- to 10-degree angle long before the accident. However, as found by the trial court, there is no evidence in the record supporting the contention that a 10- to 15-degree tilt is a dangerous condition. In response to the defendant's assertion on summary judgment that the gravestones were not a dangerous condition prior to April 3, 1995, the Brocks state only that a gravestone tilted at 45 degrees or in a condition where it could be pulled over by a 3-year-old girl was a dangerous condition. In opposing a motion for summary judgment, a party must come forward with something of evidentiary value to establish a material dispute of fact. *Glenn v. Fleming*, 247 Kan. 296, 305, 799 P.2d 79 (1990). Although it need not prove its case, the party opposing summary judgment must come forward with facts to support its claim. *Bacon*

*v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 307, 756 P.2d 416 (1988). This, the Brocks failed to do. As a result, the trial court did not err in concluding that neither the cemetery nor Wagner had notice of a dangerous condition.

(4) The Brocks argue that even if it is determined that there is no evidence to support a factual dispute on the issue of notice, Kansas law provides that where a defect is patent, a governmental entity is liable even absent notice or knowledge of the defect. They rely on our decisions in *Smith v. Krebs*, 166 Kan. 586, 203 P.2d 215 (1949), and *Snyder v. City of Concordia*, 182 Kan. 268, 320 P.2d 820 (1958), to support their contention. Both *Smith* and *Snyder* stand for the proposition that where the defect is patent *and has existed long enough so that the governmental entity should have known of it*, actual knowledge is not required. *Smith*, 166 Kan. at 589; *Snyder*, 182 Kan. at 275-76.

There was no evidence in this case that the 45-degree tilt of the gravestone was in existence for a long enough period of time that the cemetery should have known of it. The uncontroverted evidence of Wagner was that 6 days prior to the accident, the gravestone had only a slight 5- to 10-degree tilt as it had for 7 to 8 prior years. The Brocks claim only that Wagner's testimony was inaccurate and faulty due to his advancing age. However, the mere statement that a witness' testimony is not credible is insufficient to controvert a contention of fact absent some conflicting testimony or evidence. See *Hammig v. Ford*, 246 Kan. 70, 75, 785 P.2d 977 (1990). Moreover, the cemetery is not liable under K.S.A. 75-6104(k) for failure to perform an inspection or negligent inspection which would have been the only way in which it could have obtained constructive notice.

Finally, the Brocks argue that in finding that the cemetery and Wagner could not be liable without actual knowledge of a dangerous condition, the district court ignored the mode-of-operation rule. In support of their contention that this rule applies, they cite *Jackson v. K-Mart Corp.*, 251 Kan. 700, 840 P.2d 463 (1992).

In *Jackson*, this court adopted the mode-of-operation rule as a limited exception to the traditional rules of premises liability. See 251 Kan. at 710. Under the mode-of-operation rule, a plaintiff is

not required to prove notice if the proprietor of a business, simply from its mode of operation, could reasonably anticipate that hazardous conditions would regularly arise from a third party's actions. See 251 Kan. at 709. In *Jackson*, this court applied the mode-of-operation rule in determining that a question of fact existed as to whether K-Mart could reasonably foresee from the fact that it sold beverages on the premises and did not restrict their presence in the store, that customers would regularly spill beverages on the floor, creating a hazardous condition. See 251 Kan. at 710-11.

The Brocks argue that Kayla Jo was injured due to improper maintenance of the cemetery and that the cemetery and Wagner should have anticipated that their failure to maintain the cemetery would cause hazardous conditions. This argument was not presented to the trial court. A new legal theory may not be asserted for the first time on appeal. *Bolyard v. Kansas Dept. of SRS*, 259 Kan. 447, 455, 912 P.2d 729 (1996). Moreover, even if we were to address this argument, the mode-of-operation rule does not apply. The mode-of-operation is a very limited exception which makes the proprietor of a place of business liable for the *independent negligence of a third person* in certain situations. See *Jackson*, 251 Kan. at 709. There is no evidence in the record of independent negligence on the part of a third person.

## The Duty of Caretaker

The Brocks contend that the trial court erred when it concluded that Wagner owed no duty of care to maintain the gravestone in a reasonably safe manner. They contend that Wagner had a duty to care for the cemetery and that he failed to do so, with the result that Kayla Jo was injured.

It is true that one who undertakes, gratuitously or for consideration, to render services to another which he or she should recognize as necessary for the protection of third persons or their things is subject to liability to the third person for physical harm resulting from his or her failure to exercise reasonable care in the undertaking if (1) the failure increases the risk of harm; (2) he or she has undertaken a duty owed by the other to the third party; or (3) the harm is suffered because of reliance of the other or the

third party on his or her undertaking of that duty. *Honeycutt v. City of Wichita*, 251 Kan. 451, 464, 836 P.2d 1128 (1992). However, the extent of the undertaking defines the scope of duty, and a person is not liable for the negligent performance of a task he or she did not agree to assume. See *McGee v. Chalfant*, 248 Kan. 434, 442, 806 P.2d 980 (1991). Whether a duty exists is a question of law. *Honeycutt*, 251 Kan. at 463.

The Brocks argue that Wagner had assumed the duty to "care for the cemetery." The uncontroverted evidence, however, establishes that Wagner's duties were to mow grass, trim trees, mark graves for funerals, and backfill graves. Wagner did not maintain the gravestones, nor was he asked to do so. Although the Brocks in their response to the motion for summary judgment attempted to controvert this statement by asserting that Ed Horstick, a member of the cemetery board, had testified that Wagner was to "care for the cemetery," the cited portion of Horstick's deposition states that Wagner was to care for the cemetery by specifically doing the duties enumerated above. There is no evidence that Wagner undertook the duty to keep the cemetery safe for visitors.

Based upon the uncontroverted facts, we conclude that summary judgment for the defendants was appropriately granted on the following basis: The cemetery had no duty to make an inspection to determine whether the property contained a hazard to safety under the provisions of K.S.A. 75-6104(k); the defendants had no notice or knowledge of any dangerous condition prior to this accident; and the defendants did not owe a duty to Kayla Jo Brock or breach any duty they might have owed to her. Based upon our decision, we do not consider other contentions of the parties.

Affirmed.

LOCKETT, J., dissenting: I respectfully dissent from the majority opinion affirming the district court. The district court granted summary judgment based upon a finding that a cemetery district is not liable for damages because its failure to maintain, operate, regulate, or care for the cemetery fell within the scope of the discretionary function exception of K.S.A. 75-6104(e) of the Kansas Tort Claims Act. The district court and the majority are wrong for two reasons:

(1) Operating a cemetery is a proprietary act, not a governmental function subject to the Act and (2) if subject to the Act, the discretionary function exception of K.S.A. 75-6104(e) is not applicable because a legal duty exists.

The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260, 891 P.2d 435 (1995).

The Act makes liability the rule and immunity the exception. *Jackson v. City of Kansas City*, 235 Kan. 278, 286, 680 P.2d 877 (1984). A strict application of the Act is required, and the burden is on the governmental entity to establish its entitlement to any of the exceptions set forth in 75-6104 of the Act. In addition, under the Act a governmental entity is liable for damages caused by a "negligent or wrongful act or omission of any of its employees while acting within the scope of their employment *under circumstances where the governmental entity, if a private person [corporation], would be liable under the laws of this state.*" (Emphasis added.) K.S.A. 75-6103.

Proprietary Function

Governmental entities perform three types of functions: (1) governmental or public duties as the representative of the State, exercised for the benefit of the public and not for the government; (2) governmental duties exercised for the benefit of the governmental entity as well as the public; and (3) business or commercial enterprise. *State v. Moore*, 237 Kan. 523, 535, 701 P.2d 684 (1985) (Lockett, J., concurring and dissenting). The Kansas law regulating creation and operation of cemeteries provides for cemetery corporations (private) and cemetery districts (public) created by the qualified electors of the district. K.S.A. 17-1302 *et seq.* A cemetery district that engages in an activity of a business nature generally

performed by individuals or private corporations acts as a private corporation and not in its sovereign capacity. A cemetery district has the full power to perform in the efficient manner of a private corporation. *Moore*, 237 Kan. at 535.

The fundamental construction rule is that the intent of the legislature, where it can be ascertained, governs the construction of a statute. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. *Brown v. U.S.D. No. 333*, 261 Kan. 134, 141-42, 928 P.2d 57 (1996) (interpreting the Kansas Administrators' Act).

A cemetery district operating a cemetery is required to follow Kansas law, just as private cemeteries are. K.S.A. 75-6104(q), which was amended in 1996 to include cemeteries owned by municipalities, exempts municipalities from liability except in cases of gross or wanton negligence.

Prior to amendment, such municipalities were liable for simple negligence. Absent statutory provisions to the contrary, Richmond-Berea Cemetery District, a governmental entity performing a private function, is liable under the laws of the state. K.S.A. 75-6103.

Legal Duty

A tort is a violation of a duty imposed by law. *Mills v. City of Overland Park*, 251 Kan. 434, Syl. ¶ 4, 837 P.2d 370 (1992).

The discretionary function exception to the Act, K.S.A. 75-6104(e), is not applicable where a legal duty exists by case law or statute that the governmental entity is required to follow. *C.J.W. v. State*, 253 Kan. 3, Syl. ¶ 7, 853 P.2d 4 (1993). A governmental entity cannot properly claim that its challenged action falls within the discretionary function exception where the action taken or the failure to act violates a legal duty. *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 322, 757 P.2d 272 (1988).

In *Lamb v. City of Elsmore*, 18 Kan. App. 2d 641, Syl. ¶ 2, 857 P.2d 1380 (1993), the city, which owned and operated an electric light plant and distribution system for the benefits of its inhabitants, was bound to the same degree of care in the maintenance thereof as was a private or public utility.

In *Rollins v. Kansas Dept. of Transportation*, 238 Kan. 453, 458, 711 P.2d 1330 (1985), we first pointed out that the Kansas Department of Transportation, when performing a private function, is to be held to the same standard to which a private individual would be held. We then discussed the distinction between governmental and proprietary functions and the resultant liability in *Cross v. City of Kansas City*, 230 Kan. 545, 638 P.2d 933 (1982), and determined that supplying water to firefighters via hydrants was a governmental function. The failure to do so was protected from liability by governmental immunity. 230 Kan. 545, Syl. ¶ 2.

The majority correctly recognizes that the purchaser of a cemetery plot "does not acquire a fee simple interest, but only acquires an exclusive right to make internments in the lot and a right to be free from invasion by those who would disturb his or her possession, as well as the use of the public areas of the cemetery to obtain access to his or her lot." Syl. ¶ 1. Other than the right to inter bodies, the owner of the cemetery retains complete property rights in the grave sites it sells. The majority's reliance on 75-6104(k) and *Siple v. City of Topeka*, 235 Kan. 167, 679 P.2d 190 (1984), as a means to exempt Richmond-Berea Cemetery District is wrong. Both the statute and *Siple* only apply when there is a governmental duty to inspect nongovernment property. Richmond-Berea Cemetery District owned and operated the property upon which Kayla Jo Brock was injured; thus, 75-6104(k) does not apply.

Richmond-Berea Cemetery District is a governmental entity and is required by K.S.A. 17-1330(a) to maintain, operate, regulate, and care for such cemetery. The legal duty was imposed by statute and does not fall within the discretionary function exception of 75-6104(e). Under the facts and law, the district court's grant of summary judgment was improper. The district court should be reversed and the matter remanded for further action.