(85 P.3d 1261)

No. 91,049

BELINDA CROWE, *Appellant,* v. TRUE'S IGA, LLP, and K&S OIL CO., INC., *Appellees.*

Opin-
ion filed March 19, 2004.

*W.J. Fitzpatrick,* of Fitzpatrick & Bass, of Independence, for appellant.

*Steve R. Fabert, Michael K. Seck,* and *Jason H. Klein,* of Fisher, Patterson, Sayler & Smith, LLP, of Overland Park, for appellee True's IGA, L.L.P.

*Craig Kennedy,* of Johnson, Kennedy, Dahl, & Willis, of Wichita, for appellee K&S Oil Co., Inc.

Before GREEN, P.J., LEWIS, J., and JOHN J. BUKATY, JR., District Judge, assigned.

GREEN, J.: Belinda Crowe appeals from the trial court's grant of summary judgment in favor of True's IGA, LLP, (True's) and K&S Oil Co., Inc. (K&S) in Crowe's negligence claim. On appeal, Crowe

argues that the trial court erred in finding that there was no genuine issue of material fact as to the duty and breach elements of her negligence claims. We find that under the facts of this case, summary judgment was appropriate for both True's and K&S. Accordingly, we affirm the trial court's ruling.

*Facts*

K&S owned and maintained the storage tanks and pumping stations that were in front of True's. The arrangement was that True's leased to K&S a 30 x 60 foot area in front of its store where the pumping stations were located. In exchange, True's received 50% of the gross profits from K&S's use of the leased area and also had the right to use the leased area as long as it did not conflict with K&S's activities. The arrangement between True's and K&S was incorporated into a commission marketing agreement and a special purpose lease.

During December 2001, Crowe drove to True's to purchase $10 worth of gasoline for her car. Crowe testified that as she pumped the gasoline into her car, she depressed the hand lever on the gasoline nozzle but did not engage the locking mechanism. When the meter approached $10, she released her hold on the handle, but the handle became stuck and would not release. Although Crowe tried to use her thumb to release the handle, her efforts were unsuccessful.

At that point, Crowe removed the nozzle from her car's gasoline tank and again tried to dislodge the handle. When the gasoline continued to flow out of the nozzle, Crowe placed the nozzle on its resting place of the gasoline pump. Crowe testified that she tried to get the attention of the store attendant by waving her arms and yelling for help but was unsuccessful. Finally, she removed the nozzle from its resting position and placed it at the base of the pump. Crowe testified that some of the gasoline had spilled on her tennis shoes.

Crowe carefully walked into True's and told the cashier, Kristi Martin, that the gasoline pump would not shut off and that gasoline was going everywhere. The service desk at True's was located about 15-20 feet from the cashier's station and was regularly staffed. Al-

though the pumping stations were visible from the service desk, the attendant was busy with a customer and was unaware of the incident outside.

Crowe testified that Martin used the intercom to call the owner, Tom True, to the front of the store. Crowe followed Martin outside where Martin attempted to shut off the gasoline pump. There was gasoline all around Crowe's car, and Martin warned Crowe to stay back.

The testimony of Crowe and Martin differ as to how long it took Martin to stop the gasoline flow once she reached the gasoline pump. Crowe testified that it took Martin approximately 5-10 minutes to shut off the gasoline, while Martin testified that it only took her a couple of seconds to disengage the handle and turn off the gasoline.

After she stopped the gasoline flow, Martin started walking back into the store. Crowe testified that Martin walked around the gasoline pump in order to avoid the gasoline spill. Nevertheless, Crowe walked through the gasoline spill and to her car where she retrieved her purse from the front seat. After Crowe got her purse, she walked carefully towards the store. Crowe testified that she was aware the gasoline was slick and did not want to fall. Crowe's efforts were unsuccessful, however, and she slipped and fell outside the store. Crowe was outside the pool of gasoline when she fell.

Tom testified that he had just gotten outside when he witnessed Crowe's fall. He testified that Martin called him to the front of the store and told him that there was a gasoline spill. He was just coming out of the store when he saw the gasoline and saw Crowe fall.

After Tom witnessed Crowe's fall, he checked to see how much gasoline was on the ground and then called the fire department. Tom also placed an out of order sign on the gasoline pump and called Mark Hurlbutt, the owner of K&S, and reported the problem. When Hurlbutt inspected the pump used by Crowe, he discovered the spring mechanism on the nozzle was not functioning properly and replaced the nozzle.

After her accident, Crowe filed suit against both True's and K&S alleging that they were negligent in failing to keep the premises safe and in failing to properly repair and maintain the gasoline pumps, hoses, and nozzles. Crowe maintains that as a result of the accident, she sustained two herniated discs in her back. Since the accident, she has undergone three surgeries and incurred medical expenses of $101,924.07. The trial court restricted her medical expense recovery to $23,704 as this was the amount paid by Medicaid.

After discovery had been completed, both True's and K&S moved the trial court for summary judgment, essentially arguing that they did not owe a duty to Crowe and that they did not breach a duty. The trial court granted summary judgment as to both K&S and True's.

In ruling on the summary judgment motions, the trial court considered *Brock v. Richmond-Berea Cemetery Dist.*, 264 Kan. 613, Syl. ¶ 3, 957 P.2d 505 (1998), where our Supreme Court stated:

"Generally, in the absence of any statutory exemptions, the occupier of land owes to invitees and licensees alike a duty of reasonable care under the circumstances. Before an occupier of land may be held liable for an injury resulting from a dangerous condition, however, the plaintiff must show that the defendant had actual knowledge of the condition or that the condition had existed for such a length of time that in the exercise of ordinary care the landowner should have known about it."

The trial court determined that there was no evidence that K&S and True's had any warning or knowledge of the defect or that the defect existed for a period of time in which they should have discovered it. As a result, the trial court concluded that there was no genuine issue of material fact as to the duty and breach elements of this negligence action.

*Standard of Review*

The issue in this case is whether the evidence established a genuine issue of material fact as to the duty and breach elements of Crowe's negligence claim so that summary judgment was precluded.

Our standard of review in summary judgment cases is well-established:

. ."Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

### True's Duty To Exercise Reasonable Care

Crowe first contends that the trial court erred in granting summary judgment in favor of True's. Crowe argues that True's had knowledge of the condition because Martin saw gasoline everywhere and she warned Crowe to stay outside the area of the gasoline spill while she attempted to turn off the gasoline pump.

As noted by the trial court, the general rule is that an occupier of land owes a duty of reasonable care under the circumstances to an entrant. Liability does not attach, however, if the plaintiff is unable to show that the defendant had actual knowledge of the condition or that the condition had existed for a length of time that in the exercise of ordinary care the landowner should have discovered it. *Brock*, 264 Kan. 613, Syl. ¶ 3.

The trial court was incorrect in finding that True's did not have actual or constructive knowledge of the condition. Although True's did not know about the defect in the gasoline pump before Crowe's fall, Crowe's petition did not merely focus on the defective gasoline pump. She also set forth facts relating to the gasoline spill and asserted that the defendant failed to keep the premises safe. The evidence revealed that True's had notice of the gasoline spill before Crowe's accident. Specifically, Martin, an employee of True's, walked outside and saw gasoline everywhere before Crowe slipped and fell. Therefore, the trial court relied on the wrong reason when granting summary judgment in favor of True's.

Although the trial court relied on the wrong reason in making its decision, this does not end our inquiry. The judgment of a trial court, if correct, will be upheld even though the trial court relied upon the wrong ground for its decision. *State v. Bryant*, 272 Kan. 1204, 1210, 38 P.3d 661 (2002).

" 'In a negligence action, summary judgment is proper if the only questions presented are questions of law. To recover for negligence, the plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. Whether a duty exists is a question of law. Whether the duty has been breached is a question of fact.' [Citation omitted.]" *Nero v. Kansas State University*, 253 Kan. 567, 571, 861 P.2d 768 (1993).

Our Supreme Court has determined that the factors to be considered when determining whether a land occupier exercises reasonable care under all the circumstances include

"the foreseeability of harm to the entrant, the magnitude of the risk of injury to others in maintaining such a condition of the premises, the individual and social benefit of maintaining such a condition, and the burden upon the land occupier and/or community, in terms of inconvenience or cost, in providing adequate protection." *Jones v. Hansen*, 254 Kan. 499, 509-10, 867 P.2d 303 (1994).

As discussed above, an occupier of land owes a duty of reasonable care under the circumstances to an entrant. Nevertheless, the general rule is that a possessor of land has no duty to remove known and obvious dangers. See *Miller v. Zep Mfg. Co.*, 249 Kan. 34, 43, 815 P.2d 506 (1991). Crowe was aware of the gasoline spill and knew the dangers of walking through gasoline. She testified that she walked carefully after retrieving her purse from the car because she did not want to fall.

Crowe's knowledge of the gasoline spill, however, did not eliminate True's duty to exercise reasonable care under the circumstances of this case. Our Supreme Court, in *Miller*, stated that the possessor of land may have an affirmative duty to minimize the risk of an open and obvious danger when there is reason to expect that an invitee will be distracted, will forget the discovered danger, or will fail to protect against the danger. *Miller*, 249 Kan. at 43; see also Restatement (Second) of Torts § 343A, comment f (1964) (stating that possessor of land will not be relieved of duty of rea-

sonable care when possessor can anticipate that dangerous condition will cause physical harm to invitee in spite of its known and obvious danger).

Because Crowe's car was located in the middle of the gasoline spill, there was reason to believe that she would fail to protect against the danger of walking through the spill. This was not a situation where Crowe could have avoided the gasoline spill when retrieving her car. Therefore, True's had the duty to minimize the risk from this obvious danger which was located on its premises.

*Breach of True's Duty*

Our analysis turns to whether True's breached its duty to exercise reasonable care in minimizing the risk of the gasoline spill. Ordinarily, whether an occupier breaches the duty of care is a factual issue which is left to the province of the jury. See *Honeycutt v. City of Wichita*, 251 Kan. 451, Syl. ¶ 8, 836 P.2d 1128 (1992). When reasonable persons could arrive at only one conclusion to a factual issue, however, this court can determine the issue as a matter of law. *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 362, 819 P.2d 587 (1991).

Under the circumstances of this case, the evidence conclusively established that True's did not breach its duty to exercise reasonable care in minimizing the risk of the gasoline spill. The evidence revealed that True's was not given a reasonable amount of time to clean up the gasoline spill before Crowe knowingly walked through the dangerous spill to retrieve her purse and fell. The following excerpts from the summary judgment motions and deposition testimony are helpful in setting forth Crowe's knowledge of the dangerous condition and the steps taken by True's employees to alleviate the risk of the spill.

In her response to True's summary judgment motion, Crowe admitted the following facts:

"Crowe took the nozzle back out of the pump station and placed it on to the ground while gasoline was still flowing from the pump, and then walked into True's to tell a clerk."

"Crowe spilled approximately 60 gallons of gasoline on to the ground."

"Crowe was aware that the ground was covered with gasoline and that the ground was slick and dangerous because of the gasoline she spilled on the ground."

"Crowe had been standing in a pool of gasoline before walking into the store to tell the clerk."

Once Crowe informed Martin of the situation, Martin went outside to shut off the pump. Although Crowe was already aware of the dangerous condition, Martin also warned her to stay away from the gasoline spill. Specifically, Crowe testified that the following warning was given:

"Q. Where did you go?
"A. Well, I started to follow her [Martin] and she told me to stay back.
"Q. Okay. Did --what about the situation did you believe she wanted you to stay back from? Was it the gas on the ground?
"A. Yes. That's what I figured.
"Q. Okay. So where did you stop walking?
"A. It was right in front of the gas pumps because there wasn't gas right there."

After Martin shut off the pump, she walked towards the store. At that point, Crowe walked through the pool of gas which was open and obvious to her and retrieved her purse from her car. In recognizing the danger of walking through gasoline, Crowe testified to the following:

"Q. When you walked to your car to get your purse, there was gas on the ground?
"A. Yes.
"Q. You could see the gas?
"A. Yes.
"Q. And you knew to get to your car door you had to walk through the gas?
"A. Yes.
. . . .
"Q. You get the purse out of your car?
"A. Yes."
. . . .
"Q. What happened next?
"A. I turned around to go towards the store, when I did I slipped and fell.
"Q. Had you gotten to the front of your car by the time you slipped and fell?
"A. Yeah. I was right in front of it.
. . . .
"Q. Okay. Now, as you walked from your car to the place where you fell, were you trying to be careful?
"A. Yeah, I was being real careful.
"Q. And why were you trying to be careful?
"A. Because I didn't want to fall.

"Q. And what about the situation made you fearful that you were going to fall?
"A. Because there was gas everywhere.
"Q. Okay. Did you think the gas was slick?
"A. Yes, I did.
"Q. As you're walking from your car to where you fell, what were you looking at?
"A. I was looking down at the gas."

In summary, the evidence established that Crowe knew about the pool of gasoline on the ground. In addition, the accumulation of gasoline on the ground was an open and obvious danger. Before Crowe slipped and fell, she was warned to stay away from the area of the gasoline spill. As indicated by her testimony, Crowe was aware of the danger of walking through gasoline. She testified that she knew that the gasoline would make it slippery to walk and that she was afraid of falling. Instead of asking for assistance or giving True's an opportunity to clean up the spill, Crowe immediately walked through the dangerous condition once Martin shut off the pump. This court has stated: "[A] proprietor must use ordinary care to keep those portions of the premises which can be expected to be used by business invitees in a reasonably safe condition. [Citation omitted.] However, a proprietor . . . is not an absolute insurer of the safety of customers. [Citation omitted.]" See *Agnew v. Dillons, Inc.*, 16 Kan. App. 2d 298, 300, 822 P.2d 1049 (1991).

Turning our attention again to the facts of this case, we must ask the following question: Were True's actions "reasonable" under the circumstances? Once Martin and Tom became aware of the dangerous condition, they exercised reasonable care in minimizing the danger of the gasoline spill. Specifically, when Martin became aware of the condition, she alerted Tom, warned Crowe to stay back from the spill, and shut off the pump. Before Tom was able to examine the condition, Crowe walked through the gasoline spill to retrieve her purse and fell. Once he examined the condition, he called the fire department to clean up the spill. Within the short time that True's had before Crowe knowingly encountered the open and obvious condition, the evidence indicates that every reasonable effort was made to minimize the risk of the gasoline spill.

Based on the fact that Crowe was fully aware of the dangerous situation created by the gasoline spill and that True's made rea-

sonable efforts to minimize the risks of the spill, we find that there was no genuine issue of fact as to whether True's breached its duty of reasonable care under the circumstances.

*K&S's Duty*

Crowe next argues that under Restatement (Second) of Torts, § 324A (1964), K&S had a duty to exercise reasonable care in the maintenance of its gasoline pumps. Crowe contends that summary judgment for K&S was inappropriate because a question of fact existed as to whether K&S met the standard of reasonable care.

The Restatement (Second) of Torts § 324A provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Our Supreme Court has determined that to meet the threshold requirements of Section 324A, "the defendant must assume an obligation or intend to render services for the benefit of another, and the person to whom such actions are directed must accept such services in lieu of, or in addition to, such person's obligation to perform services. [Citation omitted.]" *Anderson v. Scheffler*, 248 Kan. 736, 741, 811 P.2d 1125 (1991).

K&S points out that Section 324A requires nothing more than reasonable care which is the standard of care for premises liability in Kansas. K&S argues that the trial court's ruling was correct because the evidence failed to establish that K&S had actual or constructive notice of the defective gasoline pump prior to Crowe's fall.

As noted previously, defendants must have actual or constructive notice of the condition before they can be held liable. See *Brock,* 264 Kan. at 620. The evidence revealed that before Crowe's fall, there had been no problems with the nozzle that Crowe was using.

Although Crowe testified that 1 or 2 weeks before the date of her accident she saw two K&S employees working on what appeared to be a gasoline nozzle at the pump station where her accident occurred, she was unsure which pump the employees were working on. As a result, the evidence failed to establish that K&S had notice of the defective condition prior to Crowe's accident. Because there was no evidence that K&S had actual notice of the defect or that the defect existed for a period of time in which it should have been discovered, K&S is not liable for negligence.

Additionally, there was no evidence that K&S breached its duty to maintain the pumps. Hurlbutt testified that the normal procedure was for Tom to call him when there was a problem with the gasoline pumps. Hurlbutt further testified that whenever he was in the area he checked with Tom about any possible problems and also conducted a physical inspection of the equipment. Crowe did not come forward with any evidence that this procedure departed from the maintenance that should be conducted on gasoline pumps.

The moving party in a summary judgment motion has the burden to show that there is no genuine issue of material fact. Once this has been done, the adverse party must come forward with evidence to establish a dispute as to a material fact. See *Bracken v. Dixon Industries, Inc.,* 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002). The adverse party cannot rest upon mere allegations or denials of the adverse party's pleading but must set forth specific facts showing there is a genuine issue for trial. See K.S.A. 2003 Supp. 60-256(e). Because Crowe did not set forth specific facts to show that K&S was negligent in the maintenance of the gasoline pumps, she failed to establish a genuine issue of material fact as to whether K&S breached its duty of reasonable care.

Moreover, Crowe's assertions in her petition do not support a claim that her injuries were proximately caused by the failure to repair and to maintain the gasoline pumps, hoses, and nozzles. After Martin shut off the gasoline flow, the only dangerous condition that remained was the spilled gasoline. Crowe testified that Martin walked around the gasoline pump to avoid the gasoline spill. Although a safe route around the gasoline spill existed, Crowe

walked through the gasoline spill to retrieve her purse from her car. Crowe's testimony that she slipped and fell after walking through the pool of gasoline indicates it was the accumulation of gasoline, rather than the type of gasoline pump, hose, or nozzle, which caused her to lose her footing and fall. See *Aguirre v. Adams*, 15 Kan. App. 2d 470, 809 P.2d 8 (1991) (holding that landlord's failure to provide hot water to tenant's bathtub was not proximate cause of the tenant's toddler being burned in bathtub by hot water while tenant was bringing water from kitchen and was not supervising child).

As an additional note, K&S asserts that the Restatement (Second) of Torts § 324A is inapplicable to the facts of this case because K&S did not assume True's obligation to maintain the pumps. K&S asserts that True's did not have any obligation to maintain gasoline pumps that it did not own. Instead, K&S, as the owner of the gasoline pumps, had its own obligation to maintain the pumps.

It is true that K&S did not assume True's obligation to perform maintenance on the pumps as True's never had such an obligation. It is unnecessary to conduct a lengthy discussion on this issue, however, because we have already determined that K&S cannot be held liable on Crowe's negligence claim. Therefore, we find that summary judgment was appropriate.

Finally, Crowe argues that under the doctrine of joint venture, True's and K&S are both responsible for breach of the duty of care. It is unnecessary for us to address this argument. Our decision that neither True's nor K&S breached the duty of care makes it unnecessary to address this issue

Affirmed.