(582 P.2d 300)
No. 49,362

JAMES E. SCALES, *Appellee,* v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, *Appellant.* INTERNATIONAL MULTIFOODS, INC., *Appellee.*

Petition for review denied September 13, 1978.

Opinion filed August 4, 1978.

*Robert L. White,* of Pittsburg; and *Edward W. Mullen,* of Deacy & Deacy, of Kansas City, Missouri, for appellant.

*Robert J. Fleming,* of Towner & Fleming, of Pittsburg, for appellee.

Before MEYER, P.J., ABBOTT and SWINEHART, JJ.

MEYER, J.: The jury in this personal injury case entered a verdict for the plaintiff, James Scales (hereinafter referred to as "appellee"), finding appellee's employer, International Multifoods, Inc. (hereinafter referred to as "Supersweet"), and defendant St. Louis-San Francisco Railway Company (hereinafter referred to as "appellant"), each guilty of 50 percent of the causal negligence resulting in the injury. The trial court entered judgment against appellant *only,* for the full sum of appellee's damages. Appellant had moved for joinder of Supersweet, pursuant to K.S.A. 60-258a(*c*). The trial court allowed Supersweet to be considered for purposes of "comparison only," but following *Beach v. M & N Modern Hydraulic Press Co.,* 428 F. Supp. 956 (D. Kan. 1977), assessed the full amount of appellee's damages against appellant. The trial court also refused appellant's requested instructions concerning the theory that plaintiff was a licensee, rather than an invitee.

Appellant's issues are as follows:

I. Should the trial court have directed a verdict for appellant or granted appellant's motion to set aside the judgment in accordance with its motion for directed verdict on the ground that:

A. Appellee was a licensee to whom appellant owed no duty except to refrain from willfully or wantonly harming him where there was no evidence of breach of such duty?

B. Even if appellee were considered an invitee, appellant owed him no duty with respect to open and obvious dangers of the existence of which appellee testified he was fully aware?

C. Appellee was guilty of more causal negligence as a matter of law than was appellant?

II. Did the court err in dismissing Supersweet as a party?

III. Did the court err in admitting evidence that:

A. Several years previously another employee had been injured by the same device without any showing that the circumstances and conditions were the same or similar, or that appellant had notice of such injury?

B. Appellee and his wife do not now intend to have children because of appellee's disability?

IV. Did the trial court commit error:

A. In instructing the jury that appellee was an invitee and refusing appellant's instruction concerning the duty owed a licensee, where the petition did not plead that appellee was an invitee but that he was the employee of a tenant, and where the evidence showed that appellee was, at most, a licensee?

B. In instructing the jury that the appellant owes to an invitee the duty both to make the premises safe *and* to warn him of dangerous conditions of which the proprietor knows and which are not known to the invitee, rather than stating that duty in the alternative, *i.e.*, either to make the premises safe *or* to warn invitees of dangerous conditions not known to them, and omitting a requested instruction that the jury find appellee did not know of the condition?

C. In instructing the jury by Instruction 9 concerning the effect of a finding of negligence of appellee and in permitting appellee's counsel to argue the effect of a finding of contributory negligence and apportionment of damages?

D. In giving confusing and conflicting instructions by instructing the jury in Instruction 9 that appellee's award was to be reduced by the ratio of his negligence to the total negligence of appellee and appellant, instructing the jury in Instruction 10 that they were not to reduce the damages by any percentage of fault, and instructing the jury in Instruction 11 that the jury "should *allow* appellee such amount of money as will reasonably compensate him" and that the jury "should *award* such sum as will fairly and adequately compensate him?"

E. In defining negligence in Instruction 9 as something that "an ordinary person" would or would not do rather than by the accepted standard of a "reasonably careful person?"

F. In omitting from Instruction 2 appellant's tendered issue of appellee's negligent failure "to keep a reasonable lookout where he placed his foot" by omitting from said instruction the words following "lookout?"

G. In instructing the jury by Instruction 5 that appellee did not have a duty to look for danger where there was no reason to apprehend any when said instruction was directly contrary to appellee's own testimony, and by omitting from said instruction the language submitted by appellant and adapted from PIK 13.06 concerning appellee's duties?

H. In instructing the jury by Instruction 6 that appellee had a right to assume that Supersweet had furnished him a safe place to work and safe machinery when all of the evidence was directly to the contrary, and in omitting from said instruction language submitted by appellant concerning Supersweet's duties under K.S.A. 44-104?

V. Did the trial court commit error in privately instructing the jury foreman concerning certain issues in the absence of

counsel for both parties and in the absence of the other jurors?

VI. Did the trial court commit error in refusing to grant a new trial on the grounds that the verdict was against the weight of the evidence concerning appellee's contributory negligence and was induced by passion and prejudice?

VII. Did the trial court commit error in refusing to alter or amend the judgment to assess only one-half of the damages found against appellant?

The discussion that follows does not specifically address appellant's issues in the order they appear above. However, the opinion encompasses all of such issues which we feel have merit.

Appellant owned a spur track that ran along the east edge of a grain elevator and other industrial buildings to the south before merging with the main line track. An underground shaft ran from a point beneath the spur track into the grain elevator. Supersweet's auger was set in this shaft. There were two openings or "pits" in the shaft, one underneath and between the rails of the spur track, and the other two or three feet west of the first. Both openings had, at one time, been covered by grates, but the bars of the grates had eventually all been broken off.

Two written agreements between appellant and Supersweet were in effect at the time of appellee's injury: (1) a maintenance and use agreement; and (2) a lease agreement whereby Supersweet leased a portion of appellant's premises.

A. The spur track itself was not within the leased area, but the lease agreement gave Supersweet the right to install and maintain additional equipment (on the leased property) and to operate and maintain the auger as described in a memo appended to the lease agreement.

B. Paragraph 12 of the agreement provided that Supersweet would indemnify (and hold harmless) appellant for any injury to persons caused or directly contributed to by Supersweet's use or occupancy of leased premises. Any injury arising from concurrent negligence of both parties would be shared equally.

C. Paragraph 6 of the agreement stated that although Supersweet would install any unloading device, it could not leave any such device in use unattended.

    D. Paragraph 9 of the agreement stated that lessee must keep the premises neat and in safe condition, free of debris and obstructions.

The purpose of running the shaft underneath the spur track was to facilitate unloading of the hopper cars, which were unloaded from the bottom. Supersweet employees then swept the spilled grain into the shaft while the auger was running. When the auger was not in use, the openings were covered by metal plates to keep out snow and rain.

On the evening of November 12, 1974, a boxcar of rice was unloaded. The following morning, appellee and another Supersweet employee began cleaning up the spilled rice. The other employee heard appellee scream. He looked up, realized the situation, ran into the elevator and turned off the auger.

Appellee testified that he was near the spur track and had been on the south side of the auger sweeping grain into the west pit opening. He "slipped, somehow" into the east opening beneath the track. He tried to stop the auger by jamming his broom handle into the auger. His right foot was caught up into the mechanism. As a result of the accident, appellee's leg was amputated below the knee.

Appellee alleged by his petition that: (a) his injury occurred on appellant's property; (b) appellant had a common-law duty to maintain his premises, the track and all improvements thereon, in a safe condition; and (c) by its contractual agreement with Supersweet, appellant had an additional duty by reason of contract to appellee.

At the beginning of the trial, appellant moved to join Supersweet, pursuant to K.S.A. 60-258a(*c*). The court granted the motion initially, but later modified the order to conform with *Beach v. M & N Modern Hydraulic Press,* supra. As a result, Supersweet was dismissed as an actual party, but included for purposes of comparison and apportionment of fault only, in the same manner as the employer of the plaintiff in the *Beach* case.

The court instructed the jury on the basis that appellee was a business invitee, but refused appellant's requests for instructions on licensees and duties owed thereto. No instruction was given on appellee's pleaded theory of lessor-lessee.

The court gave several instructions on comparative negligence. No. 9 informed the jury that appellee's award of damages would

be reduced by the ratio which his percentage of negligence bore to the total amount of negligence. No. 10 instructed the jury not to reduce the damages by any percentage of fault.

The jury found appellant 50 percent at fault, Supersweet 50 percent at fault, and appellee 0 percent at fault; they found appellee's damages to be $165,000.

Appellant discovered, after return of the verdict, that the jury foreman had spoken privately with the trial judge sometime during deliberation. Neither counsel was present. The judge told counsel of the meeting later and said he had advised the jury foreman on a matter concerning workmen's compensation.

The court granted judgment in favor of the appellee and against the appellant for $165,000, the full amount of the jury's findings of damage.

The trial court overruled all of appellant's post-trial motions, and this appeal followed.

We turn first to the issue of whether appellee was an invitee or a licensee. To support either definition, there must be an implied consent by the landowner. There is ample evidence to support a finding that appellee had appellant's consent to enter upon the premises. The distinguishing factor in determining whether one is an invitee or a licensee is whether the landowner derived a *benefit* from the entrant's presence on his land. See *Graham v. Loper Electric Co.,* 192 Kan. 558, 389 P.2d 750 (1964); *Weil v. Smith,* 205 Kan. 339, 469 P.2d 428 (1970); *Backman v. Vickers Petroleum Co.,* 187 Kan. 448, 357 P.2d 748 (1960); *Smith v. Board of Education,* 204 Kan. 580, 464 P.2d 571 (1970); *Lemon v. Busey,* 204 Kan. 119, 461 P.2d 145 (1969); and *Gerchberg v. Loney,* 1 Kan. App.2d 84, 562 P.2d 464 (1977), aff'd 223 Kan. 446, 576 P.2d 593 (1978).

The owner of the land owes an invitee a higher degree of care than he owes a licensee. The duty is active and positive (no showing of willfulness or wantonness is necessary), and is that of reasonable or ordinary care for the invitee's safety. It includes a duty to protect and warn an invitee against any danger that may be reasonably anticipated (*Weil v. Smith,* supra).

Appellee argues that, based on a mutual benefit theory, appellee was an invitee. Because hopper cars could only be unloaded from the bottom, Supersweet's underground auger operation was for the mutual benefit of appellant and appellant's shipping customers.

Appellant first argues that appellee was no more than a licensee. The lease agreement granted Supersweet a liberal license to use that part of the premises not actually leased to Supersweet. Appellant had to reserve a use of the spur, however, for access to the other industries to the south. Appellant claims the license was solely for the convenience of Supersweet, generating no additional benefit to appellant.

The auger shaft under the railroad tracks was to the economic benefit of both appellant and Supersweet. The railroad benefited from its carriage of the grain, and had, in fact, strictly limited the use of the spur track by other, competitive railroad companies. It was also advantageous to the appellant to have its cars unloaded as quickly as possible.

Appellant next contends that even if appellee were an invitee, a landowner's duty to an invitee is to *either* exercise ordinary care to make the premises safe, *or* to warn the invitee of dangers that are unknown to him and not likely to be discovered. The appellant cites several Kansas cases which state the duty in the disjunctive: *Graham v. Loper Electric Co.,* supra; and *Smith v. Board of Education,* supra.

Appellee contends the duty is conjunctive; that is, the landowner must make the premises safe *and* warn the invitee of dangers that are unknown to him. Kansas cases which hold that the duty is in the conjunctive are: *Thompson v. Beard and Gabelman, Inc.,* 169 Kan. 75, 216 P.2d 798 (1950); *Little v. Butner,* 186 Kan. 75, 348 P.2d 1022 (1960); and *Noland v. Sears, Roebuck & Co.,* 207 Kan. 72, 483 P.2d 1029 (1971). PIK 12.02 also states the duty of the landowner in the conjunctive.

The Restatement (Second) of Torts, § 343, pages 215-216, provides:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a)  knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk or harm to such invitees, and

(b)  should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c)  fails to exercise reasonable care to protect them against the danger."

Restatement (Second) of Torts, § 343A, page 218, further provides:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

"(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated."

Section 343A, comment (*e*), states that if an invitee is informed of the danger, he can make an intelligent choice as to whether the advantage of entering the land is sufficient to justify the risk. In the instant case, we question what choice appellee had other than quitting his job. He had complained of the dangerous condition over a considerable period of time; neither Supersweet nor the appellant did anything to alleviate the danger. Section 343A, comment (f), recognizes situations in which the landowner should anticipate harm regardless of the invitee's knowledge of the danger. In those cases, the landowner may be required to positively diminish the risk. This "stricter duty" may arise where the owner has "reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Id.* at page 220.

We feel such is the situation in the instant case. Appellee worked under conditions where the slightest slip could bring injury. Under such conditions, even a reasonably careful, non-negligent person could be injured. The appellee claims he was using ordinary care at the time of his injury; to sweep grain into the pits and turn the auger on only when the pits were full would be unreasonable, and would constitute "extraordinary" care. Apparently, this was also the jury's conclusion in finding appellant guilty of 0 percent negligence.

Where reasonable minds may differ, the question of contributory negligence should be submitted to the jury. See *Frevele v. McAloon,* 222 Kan. 295, 564 P.2d 508 (1977); and *Smith v. Union Pacific Railroad Co.,* 222 Kan. 303, 564 P.2d 514 (1977). It follows that under the law of comparative negligence, allocation of each party's proportionate negligence must be a question for the trier of fact.

We turn now to defendant's argument that Supersweet should have been made an actual party, rather than a "phantom" party

for purposes of comparison only. Supersweet was immune from suit under the Workmen's Compensation Act (specifically K.S.A. 1977 Supp. 44-501), but was a necessary "party" to provide a basis for allocation of fault. The employer's retention for mere comparison purposes was proper. We are guided by *Brown v. Keill*, 224 Kan. 195, 580 P.2d 867 (1978). The court, in considering K.S.A. 60-258a(*c*), said at page 206:

"The next preliminary question that presents itself is—will proportionate liability be defeated when a party joined under subsection (*c*) has a valid defense such as interspousal immunity, covenant not to sue and so forth? The added party in such case would not be a party "against whom such recovery is allowed" and if subsection (*d*) is taken literally such a party's percentage of fault should not be considered in determining the judgment to be rendered. It appears after considering the intent and purposes of the entire statute that such a party's fault should be considered in each case to determine the other defendant's percentage of fault and liability, if any. The proportionate liability of the other parties to the action under K.S.A. 60-258a(*d*) should not be increased merely because a party joined under subsection (*c*) has a valid defense to plaintiff's claim, other than lack of negligence."

The court further states at page 207:

". . . [T]he intent and purpose of the legislature in adopting K.S.A. 60-258a was to impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages even though one or more parties cannot be joined formally as a litigant or be held legally responsible for his or her proportionate fault."

The appellant contends that the trial court erred in the admission of certain evidence. We conclude that it was highly relevant that another person had been injured by the same device (the auger) several years previous. We also find the evidence that appellee and his wife had abandoned plans to have children (because of appellee's disfigurement) relevant to determine the amount of damages.

For the reasons previously discussed, we conclude that the trial court properly instructed the jury as to duty owed an invitee only. The evidence before the trial court demonstrated that appellant derived financial benefit from appellee's presence on appellant's property. See *Graham v. Loper Electric Co.,* supra; *Weil v. Smith,* supra; and *Smith v. Board of Education,* supra.

We turn now to the question of whether it was error for the trial judge to answer a question for the jury in the absence of counsel. K.S.A. 60-248(*e*) provides:

"If after the jury has retired for deliberation, it desires further information as to any part of the law or evidence pertaining to the case, it may communicate its request through the bailiff to the court in such manner as directed by the court, following which the court, after notice to counsel for the parties, may consider and make such provision for a response to the request of the jury as the court finds to be required under the circumstances."

In *Howard v. Miller,* 207 Kan. 246, 485 P.2d 199 (1971), the court said at page 249:

"Since territorial days we have continuously had statutes providing that communication between court and jury as to the law in the case shall take place *in the presence of, or after notice to, the parties or their counsel.* . . ."

We conclude it was error for the trial court to answer a juror's question in the absence of counsel. The question remains whether this constituted prejudicial error. To decide this, we must determine from the record, as best we can, what was said. At page 339 of the trial transcript, Mr. Mullins, in argument to the court, states:

". . . After the man, who turned out to be the foreman, Mr. Seely, had gone back into the jury room and the jury had resumed their deliberations on the morning of the day they returned the verdict, the Court advised Mr. Fleming and me that that juror, Mr. Seely, had come in and asked the Court a question concerning the obligation of the compensation carrier to make future payment, I believe the Court said for medical expense on behalf of the plaintiff, and I am not sure, but I believe about that time the Court was interrupted by a telephone call, but as I understood it, the gist of the Court's response was something to the effect that they would be so obligated, although the Court said something to us, to Mr. Fleming and me, and I am not sure whether the Court may have said it to the juror or not, I didn't get that straight, about there being a lid on that obligation. The effect that any of that may have had, or precisely what was said, as I understand it, was not reported, is that correct, that the court reporter was not present at the time that went on, sir?

"THE COURT: That is correct. You have correct the substance of what was said. They asked one question. At the time the man came to the door and asked me that, counsel were not in the building, and it was a simple question that had a simple answer and I answered it."

While it is error for the court to answer questions for the jury, except after prior notice to counsel for the parties, such error is not always of a sufficient gravity to require a new trial. Such error must be scrutinized in each case as to whether the same was harmless. Under all the circumstances of this case, we conclude this exchange with the juror was harmless and did not prejudice the substantial rights of the appellant.

Appellant's claims that (1) appellee's being found guilty of no

negligence is contrary to all the evidence in the case; and (2) the verdict is excessive, are without merit. We have already answered the first part of this complaint. The verdict would not appear excessive considering that appellee has lost part of a leg. The function of the appellate court, however, is not to weigh conflicting evidence or pass on the credibility of witnesses. This court's concern is with the evidence which supports the jury's findings, and not with findings which might have been supported. *Steele v. Harrison,* 220 Kan. 422, 552 P.2d 957 (1976). If a jury verdict is supported by substantial competent evidence, the findings will not be disturbed on appellate review. *Landrum v. Taylor,* 217 Kan. 113, 535 P.2d 406 (1975).

Appellant complains of various instructions as being confusing and conflicting. For the most part, we find appellant's complaints in this regard to be without merit. Instructions No. 6 and 9 require our attention.

Instruction No. 6 said in part that appellee had a right to assume Supersweet had furnished him a safe place to work. The instruction more properly should have stated Supersweet's duty without noting what appellee had a right to assume. We feel, however, that if this was error, it was harmless.

Instruction No. 9 informed the jury of the effect of its answers to the special verdict questions (apportioning the parties' negligence). Appellant's first objection to instruction No. 9 concerns the following portion of that instruction:

"Under the laws of Kansas applicable to this case, plaintiff's award of damages is reduced by the ratio which his percentage of negligence be٤s to the total amount of negligence allocated among plaintiff, James Scales, and defendant, St. Louis-San Francisco Railway Company."

Appellant argues that this is a case of first impression in Kansas, but it has been the rule in other comparative negligence states that the jury is not told the effect of their special answers, either by instruction or argument. We are not bound by the law of other jurisdictions. K.S.A. 60-258a is unique from the comparative negligence statutes of other states. Juries in civil cases have always known the effect of their verdict in monetary terms. They have always been instructed that should they decide in plaintiff's favor, they should award plaintiff such sum of money as would properly compensate him for his injuries. This is logical because the amount of damages to a prevailing party is a question of *fact*

that the jury is asked to determine. We hold that it was not error for the court to advise the jury of the effect of their special answers on appellee's award of damages.

We come now to appellant's last claim of error in which appellant claims the trial court committed error in refusing to assess only 50 percent of the damages found against defendant. The trial court's judgment was predicated upon *Beach v. M & N Modern Hydraulic Press Co.*, supra. Because we now have the benefit of *Brown v. Keill*, supra, the decision of the trial court must be reversed insofar as it levies the entire judgment against appellant. It is ordered that the trial court's judgment be modified by awarding judgment against appellant for $82,500 instead of the $165,000 previously awarded.

Affirmed in part; reversed in part.