(189 P.3d 1181)
No. 98,663

JOHN and DONNA WELLHAUSEN, as HEIRS OF ERIC WELLHAUSEN, DECEASED, *Appellants,* v. THE UNIVERSITY OF KANSAS, *Appellee.*

Opinion filed August 8, 2008.

*Andrew B. Protzman* and *Tony Shapiro*, of Shapiro and Protzman, P.A., of Overland Park, for appellants.

*Sara L. Trower*, associate general counsel and special assistant attorney general, for appellee.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

CAPLINGER, J.: John and Donna Wellhausen (the Wellhausens) appeal the district court's order granting summary judgment in favor of the University of Kansas (University). The Wellhausens claim the district court erred in finding their wrongful death claim was barred by the discretionary function and design immunity ex-

ceptions to the Kansas Tort Claims Act (KTCA), K.S.A. 75-6104(e) and K.S.A. 75-6104(m), respectively.

We hold the district court properly granted summary judgment in favor of the University based upon the application of the discretionary function exception, K.S.A. 75-6104(e). The University owed no duty to warn the Wellhausens' son, who was a tenant in a University dormitory, of the open and obvious danger that would result from crawling out of the narrow window opening of his seventh-floor dormitory room, and attempting to drop down to a 2-foot-wide concrete ledge several feet below the window, 45 to 50 feet above the ground. Further, we can find no obligation on the part of the University to protect students from their own reckless and negligent acts.

Additionally, the district court did not err in granting summary judgment on any claims relating to the design of the dormitory building, as such claims are barred by the design immunity exception, K.S.A. 75-6104(m).

*Factual and procedural background*

In September 2003, the Wellhausens' son, Eric Wellhausen, was a freshman at the University. Eric resided in a seventh-floor room at Oliver Hall, a dormitory on the University's campus. Each dormitory room has a casement window located 4 feet 10 inches above a 2-foot-wide concrete "eyebrow ledge" that runs along the exterior of each floor of Oliver Hall. The casement windows open only 15.75 inches toward the eyebrow ledge; further, each window has an interior screen fastened with clips screwed into the aluminum window frame.

Pursuant to University policy, Eric and his mother signed a student-housing contract under which Eric agreed to abide by the policies and regulations printed in the University's student-housing handbook. The handbook prohibited students "at all times" from removing casement window screens, exiting the building through windows, or being on window ledges. Eric also agreed to follow the terms of a "Safe and Secure" poster mounted in each dorm room that directed students not to remove the window screens and never to exit the room through the window.

On September 12, 2003, Eric climbed through the casement window of his seventh-floor room, approximately 50 feet, 9 inches above ground, and stepped onto the eyebrow ledge to smoke a cigarette. He fell off the ledge, resulting in his death. A medical examiner determined Eric's blood-alcohol level at the time of his death was .16, significantly impairing his motor coordination and judgment.

Eric's parents, the Wellhausens, commenced a wrongful death suit against the University, alleging the eyebrow ledge presented a dangerous condition and the University was negligent for failing to correct the condition or adequately warn Eric of the danger.

The district court granted summary judgment for the University, finding the Wellhausens' claims were barred by two exceptions to the general rule of liability under the KTCA—the design immunity exception, K.S.A. 75-6104(m), and the discretionary function exception, K.S.A. 75-6104(e). The court further found the Wellhausens failed to establish that the alleged negligence by the University was the proximate cause of Eric's death. Finally, the district court concluded no reasonable jury could find that the University's negligence exceeded 50 percent.

On appeal, the Wellhausens argue the district court erred in granting summary judgment because neither the discretionary function exception nor the design immunity exception bars their claims. Further, they claim genuine issues of material fact preclude summary judgment.

" ' " 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' " ' [Citations omitted.]" *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007).

To establish a claim for wrongful death based on negligence, the Wellhausens must prove the existence of a duty, a breach of that duty, injury, and a causal connection between the breach of the duty and the injury suffered. Whether a duty exists is a question of law, but whether the duty has been breached is a question of fact. Appellate courts apply a de novo standard when reviewing whether a duty exists. *Robbins v. City of Wichita*, 285 Kan. 455, 460, 172 P.3d 1187 (2007).

As is often stated, under the KTCA, liability is the rule and immunity the exception. See K.S.A. 75-6103; K.S.A. 75-6104. Further, it is the obligation of the governmental entity to prove it is entitled to application of any of the exceptions in K.S.A. 75-6104. *Nero v. Kansas State University*, 253 Kan. 567, 585, 861 P.2d 768 (1993).

*Application of K.S.A. 75-6104(e)*

The district court found the Wellhausens' wrongful death claim to be barred by the discretionary function exception to the KTCA, K.S.A. 75-6104(e), which bars claims against a government entity or employee "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved."

The Wellhausens point out that K.S.A. 75-6104(e) does not apply when "there is a clearly defined mandatory duty or guideline." *Nero*, 253 Kan. at 585. In *Nero*, our Supreme Court held that a university-landlord has a legal duty to use reasonable care to protect its student-tenants. 253 Kan. at 584. Because the University was obligated to use reasonable care to protect its student, the Wellhausens contend the discretionary function exception does not apply here.

*1) Known and obvious danger*

The University concedes that as a landlord, it owes a duty of reasonable care to its student-tenants. However, it points out that this duty does not require it to warn of known and obvious dangers such as the danger presented by Eric's actions here. See *Tillotson*

*v. Abbott*, 205 Kan. 706, 711, 472 P.2d 240 (1970) (landlord does not owe duty to warn of obvious danger of open-flame heater).

Citing Restatement (Second) of Torts § 343A, comment b (1964), the Wellhausens counter that the University failed to demonstrate that the danger of stepping out onto the ledge was known or obvious because the University did not show that Eric appreciated the danger. However, the Restatement advocates an objective test to determine whether a danger is known and obvious. See Restatement (Second) of Torts § 343A, comment b (no obligation to protect against dangers of which the invitee/reasonable person knows or has reason to know). Clearly, even if Eric lacked actual knowledge of the danger, he had reason to know of the open and obvious danger which might result from climbing out of a seventh-floor dormitory room window in order to stand upon a 2-foot-wide ledge several feet below the window.

Because the danger facing Eric was known and obvious, we find the University was not obligated to warn him of the danger.

### 2) Affirmative duty to minimize risk

Alternatively, the Wellhausens argue that even if the danger was known and obvious, the University nevertheless had an affirmative duty to warn or protect against the danger because it was foreseeable that Eric's accident might occur. They point to evidence the University knew students accessed the dormitory ledges, including reported violations of the University's policy against removing the window screens and prior accidents involving students falling from dormitory ledges or roofs.

In *Miller v. Zep Mfg. Co.*, 249 Kan. 34, 43, 815 P.2d 506 (1991), our Supreme Court held that a possessor of land has an affirmative duty to "minimize the risk [of an obvious danger] if there is reason to expect an invitee will be distracted, so that he or she will not discover what is obvious, will forget what has been discovered, or will fail to protect against the danger. [Citations omitted.]" However, this exception has been applied only in very limited circumstances. See 249 Kan. at 43; *Crowe v. True's IGA*, 32 Kan. App. 2d 602, 607, 85 P.3d 1261, *rev. denied* 278 Kan. 844 (2004); *Scales v. St. Louis-San Francisco Ry. Co.*, 2 Kan. App. 2d 491, 498, 582 P.2d 300, *rev. denied* 225 Kan. 845 (1978).

For instance, in *Miller*, the plaintiff was injured when he inadvertently walked into a concrete pit while sealing the floors of an industrial building. Although the plaintiff was aware of the danger, the court applied the stricter duty because the employer had reason to suspect the plaintiff "would be distracted and forget to protect himself from the dangerous condition of the open pit." 249 Kan. at 45.

The court in *Miller* relied upon *Scales*, 2 Kan. App. 2d 491. Scales was a grain elevator technician who worked under conditions where even the "slightest slip" could bring injury. He eventually lost part of his leg when he fell into an auger pit as he swept grain into a nearby pit. The *Scales* court found a stricter duty may apply "where the owner has 'reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.' " 2 Kan. App. 2d at 498 (citing Restatement [Second] of Torts § 343A, comment f, p. 220).

Further, in *Crowe*, 32 Kan. App. 2d at 607, this court found a business owner owed a duty to a customer who slipped and fell while walking to her vehicle located in the middle of a gasoline spill. The plaintiff admitted she was aware of the gasoline spill and the dangers of walking through the spill. Nevertheless, this court held that because the plaintiff could not have avoided walking through the gas spill to retrieve her vehicle, the gas station had reason to believe the plaintiff would fail to protect herself against the danger of walking through the spill and had a duty to minimize the risk of the obvious danger. 32 Kan. App. 2d at 607-08.

In contrast to *Miller* and *Scales*, the evidence here does not indicate that Eric was distracted or inadvertently failed to appreciate the danger of his actions. While the University may have known of other incidents involving students taking similar risks in the past, the evidence does not indicate that any of these other incidents involved inadvertent or distracted actions by students. Further, unlike the plaintiff in *Crowe*, Eric undoubtedly could have avoided the risk he affirmatively undertook here.

The evidence established that Eric was intoxicated and decided to smoke a cigarette by crawling out of the narrow opening of his

seventh-floor dorm room window, and then dropping down approximately five feet to a 2-foot-wide ledge, some 45 to 50 feet above the ground. Under these circumstances, we conclude the University, as a landlord, did not owe its student-tenants any higher duty than that of reasonable care, and was not required to take further steps to further minimize the risk of this obvious danger.

Moreover, as the University points out, the Wellhausens' argument implies that the University has an obligation to protect students from themselves. However, we can no longer base a University's liability on the doctrine of *in loco parentis*. In *Nero*, our Supreme Court rejected that doctrine as "outmoded and inconsistent with the reality of contemporary collegiate life." 253 Kan. at 580. While *Nero* concerned a university's obligation to protect students from the actions of fellow students or third parties, *Nero* may be extended to reject any obligation on the part of a university to protect its students from their own reckless and negligent acts. As the University points out, to conclude otherwise would contradict *Nero*'s admonition that "a university is not an insurer of the safety of its students." 253 Kan. at 584.

Under the facts of this case, we conclude that while the University, like any landlord, had a duty to act reasonably to protect the safety of its student-tenants, it did not have an affirmative duty to prevent Eric Wellhausen from acting irresponsibly. Eric knew or should have known of the danger presented by his actions. Accordingly, the district court did not err in finding the Wellhausens' claim was barred by the discretionary function exception, K.S.A. 75-6104(e).

### Application of K.S.A. 75-6104(m)

The Wellhausens also claimed the district court erred in concluding the design immunity exception, K.S.A. 75-6104(m), precluded their claim that the University "created the dangerous condition . . . permitted the dangerous condition to exist and failed to correct the dangerous condition." K.S.A. 75-6104(m) provides governmental immunity for claims regarding:

"the plan or design for the construction of or an improvement to public property . . . if the plan or design is approved in advance of the construction or

improvement by the governing body of the governmental entity or some other body or employee exercising discretionary authority to give such approval and if the plan or design was prepared in conformity with the generally recognized and prevailing standards in existence at the time such plan or design was prepared."

The Wellhausens do not suggest that Oliver Hall was not constructed in conformity with the recognized standards of the time. Instead, they argue the statute does not apply because they presented claims independent of the design of the building. See, *e.g.*, *Dunn v. U.S.D. No. 367*, 30 Kan. App. 2d 215, 229, 40 P.3d 315, *rev. denied* 274 Kan. 1111 (2002) ("governmental entity is not immune from liability caused by negligence independent of design, where that independent negligence is a concurring, proximate cause of the injury").

Thus, while the district court correctly found that the design immunity exception precludes any claim made by the Wellhausens regarding the design of the dormitory building, that exception does not preclude any independent claims regarding a failure to warn or to minimize the risk of a defective design. However, as discussed above, the University had no affirmative duty to warn in this case, and even if the district court erred in applying the design immunity exception, summary judgment was appropriate under the discretionary function exception.

The district court did not err in granting summary judgment in favor of the University on the Wellhausen's wrongful death claim.

Affirmed.