NOT DESIGNATED FOR PUBLICATION

No. 114,788

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TWYLIA WARLICK,
*Appellant*,

v.

MAA AMBA KANSAS MANAGEMENT, LLC, a/k/a
MAA AMBA LLC, d/b/a COMFORT SUITES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Saline District Court; PAUL J. HICKMAN, judge. Opinion filed September 16, 2016.
Affirmed in part and reversed in part.

*Patrik W. Neustrom*, of Neustrom & Associates, P.A., of Salina, for appellant.

*Patrick J. Murphy*, of Woodard, Hernandez, Roth & Day, LLC, of Wichita, for appellee.

Before ARNOLD-BURGER, P.J., MCANANY and GARDNER, JJ.

*Per Curiam*:  MAA AMBA Kansas Management, LLC, (Comfort Suites) owns
and operates the Comfort Suites motel in Salina. Twylia Warlick and her husband were
guests in the motel. Warlick contends that during the night she got up to use the
bathroom. Because the bed was so close to the wall and the room's air conditioning unit,
she could not get out of the side of the bed next to the wall but had to climb off the end of
the bed. When she returned from the bathroom, she climbed back into bed from the foot
of the bed. In doing so, she put weight on her left arm which was on the side of the
mattress closer to the edge. According to Warlick, at that point the mattress gave way and

1

she fell from the bed into the narrow space between the bed and the wall, injuring her head, her legs, her back, and fracturing her left arm.

Warlick sued Comfort Suites for her personal injuries, claiming Comfort Suites was negligent in various aspects of maintaining and positioning the bed in the room, including placing the mattress so that its edge overhung the box springs and provided no support when Warlick placed her weight on the mattress, which then gave way and caused her to fall.

Comfort Suites moved for summary judgment based on the proposition that the condition of the motel room was open and obvious to Warlick. Thus, it owed no duty to warn Warlick about it. It also argued that Warlick's fall and injuries were not foreseeable. The district court granted Comfort Suites' motion, and this appeal followed.

*Summary Judgment Standards*

Our review of the district court's summary judgment proceedings are de novo. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011). Accordingly, we will not dwell on the district court's ruling or the reasons for its ruling. We will simply examine Comfort Suites' summary judgment motion anew, applying the same standards used in the district court.

Those standards are well known to the parties but are worth being summarized here. Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 2015 Supp. 60-256(c)(2). In considering the motion, we resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the

2

nonmoving party. When opposing a motion for summary judgment, a party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. We will deny the motion if reasonable minds could differ as to the conclusions drawn from the evidence. See *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014).

If a disputed fact, however resolved, does not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013). Summary judgment is appropriate if the defendant can establish the absence of evidence necessary to support an essential element of a plaintiff's case. *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 318, 241 P.3d 75 (2010).

In actions based on negligence, summary judgment should be granted with caution. *Apodaca v. Willmore*, 51 Kan. App. 2d 534, 538, 349 P.3d 481 (2015), *rev. granted* January 25, 2016. See *Fettke v. City of Wichita*, 264 Kan. 629, 632, 957 P.2d 409 (1998). Summary judgment in a negligence action is generally proper if the only questions presented are questions of law. *Martin v. Naik*, 297 Kan. 241, 245, 300 P.3d 625 (2013). If a court concludes that a defendant accused of negligence did not have a duty to act in a certain manner toward the plaintiff, then a court may grant summary judgment because the existence of a duty is a question of law. *Elstun v. Spangles*, 289 Kan. 754, 757, 217 P.3d 450 (2009).

Under Supreme Court Rule 141 (2015 Kan. Ct. R. Annot. 242), the movant is required to concisely state, in separately numbered paragraphs, the uncontroverted contentions of fact, with precise references to the record where support for such fact can be found. If controverted by the opposing party, the opposing party must concisely

3

summarize the conflicting evidence with a precise reference to where in the record that evidence can be found. Finally, we will consider only those parts of the record cited by the parties and choose not to spend time scouring the record for facts not specifically cited by the parties.

*Claims and Defenses*

With that, we turn to the district court's pretrial order to identify the various claims and defenses.

Highly summarized, Warlick contends that the king sized bed was too large for the room; the bed was located so close to the wall that access to the bed from the side was impractical; Comfort Suites did not warn patrons about the narrow and unsafe access to the bed; and the mattress was not placed properly over the box springs, creating an unsafe condition. Warlick contends she was injured and her husband suffered a loss of consortium as a proximate result of Comfort Suites' negligence. Comfort Suites denies negligence, denies the existence of a dangerous condition, and contends that the location and size of the bed in the room were not hidden but were open and obvious to Warlick. It denies causation as claimed and the nature and extent of Warlick's claimed injuries and damages. It also asserts the comparative fault of Warlick.

*Uncontroverted Material Facts*

The following material facts, again highly summarized, are uncontested for purposes of Comfort Suites' motion.

Warlick and her husband were on a vacation trip traveling across the country when they stopped for the night at the Salina Comfort Suites motel and rented a king suite for

the night. They checked in late in the afternoon. When they entered their motel room, Warlick observed the closeness of the king-size bed to the wall and the wall air conditioning unit. A king-size bed is 14 inches wider that a queen-size bed. The closeness of the king-size bed to the wall limited easy access to the bed from the side facing the wall. She estimated that the bed was 3 to 4 inches from the air conditioning unit. Warlick tried to pass through the space between the bed and the air conditioning unit but "realized [she] couldn't get through there without bumping [her] legs." About a month before this incident, previous customers had complained on Trip Advisor about the insufficient amount of space between the air conditioning unit and the bed in rooms in this motel similar to the one occupied by Warlick.

Warlick did not move the bed or complain to the motel staff about the position of the bed. When she retired for the night, she entered the bed from the foot of the bed because she did not consider it safe to enter from the side of the bed facing the wall.

Warlick got up during the night to use the bathroom. She did not get out on the opposite side of the bed because her husband was sleeping there and she would have to climb over him. She got out of bed by scooting to the foot of the bed and getting out there. When she returned from the bathroom she reentered the bed in the same fashion, climbing in from the foot of the bed. In doing so, she did not think she was close to the edge of the bed. But when she got toward the head of the bed, the mattress gave way under the weight of her arm and she fell into the space between the bed and the wall. Her "left arm slid, it just—it just kind of went down the mattress, like gave way, and it kind of went down the side of the mattress" and then her whole body went with it. "It felt like the mattress gave under the weight of my hand or body, that part of my body, and just kind of declined and I went with it."

As she fell Warlick hit her head on the night stand, and her left arm was pinned under the bed. Warlick's hip was on the floor, but her left arm and back were jammed in the space between the wall and the bedframe. Warlick suffered bruises to her legs, biceps, and left ear. Her left arm was broken in the bicep area, and she also injured her back.

Comfort Suites' policy was to provide a different room to customers who inform the front desk that they do not believe their room is safe. Comfort Suites provides no warning about the narrow access to the beds in the king suites.

Comfort Suites' housekeepers make up the beds and are in charge of making sure the mattresses are properly placed on the box springs. In the process of making up beds, a mattress may move a couple of inches from its position on the box springs. This condition would not necessarily be apparent to the occupant of the room because of the various layers of bed linens, blankets, and comforters covering the bed.

*Discussion*

The nature of the duties Comfort Suites owed Warlick is an issue of law. But whether Comfort Suites has breached any of its duties to Warlick is generally an issue of fact for the jury. See *South v. McCarter*, 280 Kan. 85, 94, 119 P.3d 1 (2005).

The duty owed by an occupier of land to invitees and licensees alike is one of reasonable care under all of the circumstances. *Jones v. Hansen*, 254 Kan. 499, 509-10, 867 P.2d 303 (1994).

In Kansas, our Supreme Court has recognized the duty of an innkeeper to keep the premises in a reasonably safe condition. *Shaubell v. Bennett*, 173 Kan. 774, 777-78, 252 P.2d 927 (1953). In addition, an innkeeper has a duty to protect its guests against an

6

unreasonable risk of physical harm. See *Gardin v. Emporia Hotels, Inc.*, 31 Kan. App. 2d 168, 171-72, 61 P.3d 732 (2003) (citing Restatement [Second] of Torts § 314A [1965]). Thus, Comfort Suites owed Warlick an affirmative duty to exercise reasonable or ordinary care for her safety, including an obligation to warn her against any danger that might reasonably have been anticipated but was not open and obvious to her.

■ *Positioning of the Bed*

Warlick complains that the size and placement of the bed so close to the wall and the air conditioning unit created an insufficient walkway. But she does not claim this was a hidden danger. She knew that the space was insufficient to allow her to safely pass, so she chose to enter the bed from the foot and crawl up into bed. When she got up in the middle of the night to use the bathroom, she remembered that the bed on her side was too close to the wall. When she returned to bed, she again climbed in from the foot of the bed.

Generally, a landowner owes no duty to warn of a danger which is obvious and as well-known to the person injured as it is to the owner. See *Miller v. Zep Mfg. Co.*, 249 Kan. 34, 43-44, 815 P.2d 506 (1991). A business proprietor is not an insurer against all accidents which may occur on the premises. *Little v. Butner*, 186 Kan. 75, 80, 348 P.2d 1022 (1960); see *e.g.*, *Crowe v. True's IGA*, 32 Kan. App. 2d 602, 610, 85 P.3d 1261, *rev. denied* 278 Kan. 844 (2004). Liability arises when the business proprietor has superior knowledge over that of a business invitee regarding a dangerous condition and fails to warn of the risk. *Little*, 186 Kan. at 80.

An owner or occupier of land has a duty to keep the premises safe from hidden dangers. See *Walters v. St. Francis Hosp. & Med. Center, Inc.*, 23 Kan. App. 2d 595, 598, 932 P.2d 1041, *rev. denied* 262 Kan. 970 (1997). Hidden dangers include those

7

dangers hidden from the eye as well as from the appreciation of persons injured. *Bartlett v. Heersche*, 204 Kan. 392, 398, 462 P.2d 763 (1969). The existence of a hidden danger is often a fact question reserved for the jury. See *Wagoner v. Dollar Gen. Corp.*, 955 F. Supp. 2d 1220, 1228 (D. Kan. 2013) (applying Kansas law and denying a motion for summary judgment because a factual issue existed as to whether a condition was open and obvious). But here, there is no dispute that Warlick was aware of the open and obvious proximity of the bed to the wall and the air conditioning unit.

Warlick counters that she did not appreciate the danger so, in that sense, the danger remained hidden. But she testified in her deposition that she noticed how close the air conditioning unit was to the bed, "so I was being extra cautious to avoid it." It is an uncontested fact that Warlick appreciated the danger of the restricted access to the bed.

Nevertheless, citing *Scales v. St. Louis-San Francisco Ry. Co.*, 2 Kan. App. 2d 491, 498, 582 P.2d 300, *rev. denied* 225 Kan. 845 (1978), Warlick argues that even if the positioning of the bed was open and obvious to her, Comfort Suites was in the position to anticipate the possible harm to her. In *Scales*, the plaintiff was sweeping grain into an unloading bin which contained an auger. The auger was used to transfer grain into storage once unloaded from rail cars. The plaintiff slipped and fell into the bin and his leg was caught in the auger and severed. The Supreme Court cited § 343A of the Restatement (Second) of Torts (1965), which provides, in part: "'(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.'" 2 Kan. App. 2d at 498. The court noted the Restatement's comment (e), which "states that if an invitee is informed of the danger, he can make an intelligent choice as to whether the advantage of entering the land is sufficient to justify the risk." 2 Kan. App. 2d at 498. But under the facts in *Scales* the

8

court stated: "[W]e question what choice appellee had other than quitting his job." 2 Kan. App. 2d at 498.

Warlick directs us to illustration 5 in Comment 1 of Restatement (Second) of Torts, § 343A(1) (1965). She claims this illustration "gives an example similar to the facts of this case." Illustration 5 is as follows:

> "5. A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forego her employment. A is subject to liability to C." Restatement (Second) of Torts, § 343A(1) (1965), Comment 1, illustration 5.

This illustration fits the situation in *Scales* but not the facts in our present case. There is no assertion that Warlick had no alternative but to subject herself to danger. Warlick noticed the inadequate space between the bed and wall when she first entered the room. She did not request a new room, make a complaint, or request assistance. The Restatement rule applies only in very limited circumstances. *Wellhausen v. University of Kansas*, 40 Kan. App. 2d 102, 106, 189 P.3d 1181 (2008). This is not one of those circumstances. This theory is not supported by the evidence and does not create a genuine issue of material fact.

Comfort Suites had no duty to protect Warlick from the open and obvious danger of the small space between the bed and the air conditioning unit. Comfort Suites is entitled to partial summary judgment in its favor based upon this claim.

9

■ *Positioning of the Mattress on the Box Springs*

Warlick also claims negligence based on the placement of the mattress on the box springs. She relies on the testimony she gave when deposed by Comfort Suites regarding the mechanism of her fall. She also relies on testimony that in the process of making up a bed, the mattress may move a couple of inches to one side or the other from its position squarely on the box springs.

She also relies, in part, on photos which show the mattress overhanging the box springs by several inches. The problem with these photos is that they were taken well after Warlick's fall and do not necessarily show the position of the mattress vis-à-vis the box springs at the time of her fall. But the photos do show what appears to be the typically made-up bed with blankets and a comforter which would disguise to the casual eye any overhang of the mattress over the box springs.

We do not pass on the ultimate merit of this theory of liability. But considering the evidence in the light favoring Warlick, we cannot conclude that as a matter of law no reasonable jury would find that Warlick's fall was caused by a misplacement of the mattress from its normal position over the box springs. On this theory of liability there remain genuine issues of material fact regarding the position of the mattress on the box springs and whether it was due to Comfort Suites' negligence, the discoverability of the position of the mattress, the foreseeability of injury, and any comparative fault on the part of Warlick. These must await resolution at trial.

Accordingly, Comfort Suites was entitled to partial summary judgment on Warlick's claim regarding the position of the bed in relationship to the wall and air conditioner. But Comfort Suites was not entitled to summary judgment on the claim regarding the positioning of the mattress on the box springs.

Affirmed in part and reversed in part.